UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

...................................................................... x
                        :

PATRICIA COHEN,                    :

                        :

               *Plaintiff*,        :

                        :

         -against-          :

                        :   Hon. Richard J. Holwell

STEVEN COHEN, DONALD COHEN,   :

BRETT LURIE, EDWARD BAO, SAC   :   No. 09 CV 10230 (RJH)

CAPITAL MANAGEMENT, INC., DONALD   :

T. COHEN C.P.A., P.A., and GRUNTAL &   :   **ECF Case**

CO. L.L.C.,                    :

                        :   <u>**ORAL ARGUMENT REQUESTED**</u>

          *Defendants*.      :

                        :

                        :

                        :

                        :

                        :

...................................................................... X

## BRIEF IN SUPPORT OF THE COHEN AND S.A.C. DEFENDANTS' <br> <u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>

WILLKIE FARR & GALLAGHER LLP
Martin Klotz
John R. Oller
Tariq Mundiya
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendants Steven Cohen,*
*Donald Cohen, S.A.C. Capital Management,*
*Inc. and Donald T. Cohen C.P.A., P.A*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND AND ALLEGATIONS OF THE AMENDED COMPLAINT ........3

      A.     The Cohen Marriage and 1988 Divorce Proceedings ................................4

      B.     Plaintiff's 1991 Attempt to Set Aside the 1989 Separation Agreement On the Basis of Fraud and Duress. ..................................................................6

      C.     Plaintiff's Original Complaint ..................................................................8

      D.     The Amended Complaint ...........................................................................9

ARGUMENT .....................................................................................................................10

I.      THE AMENDED COMPLAINT DOES NOT STATE A RICO CLAIM ........................10

      A.     The RICO Claims Are Barred by the Statute of Limitations. ..................10

      B.     Plaintiff Has Not Alleged Any RICO Injury to Her Business or Property. .............18

      C.     Plaintiff Has Not Pleaded a "Pattern" of Racketeering Activity. ............19

      D.     The Amended Complaint Does Not Adequately Allege a RICO "Enterprise."...........................................................................................22

      E.     The Amended Complaint Does Not State A Claim Under Section 1962(d). ..........24

II.     THE FRAUD CLAIM SHOULD BE DISMISSED ..........................................................24

III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE. ..................................25

CONCLUSION..................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

## CASES

*131 Main Street Associates v. Manko,*
   179 F. Supp. 2d 339 (S.D.N.Y. 2002)...................................................................16

*Abernathy v. Erickson,*
   657 F. Supp. 504 (N.D. Ill. 1987) ......................................................................19

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*
   483 U.S. 143 (1987)............................................................................................10

*Ainbinder v. Kelleher,*
   No. 92 Civ. 7315, 1997 U.S. Dist. LEXIS 10832 (S.D.N.Y. July 25, 1997)...........................13

*Allen v. New World Coffee, Inc.,*
   No. 00-CV-2610, 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002) .............................24

*Babaev v. Grossman,*
   312 F. Supp. 2d 407 (E.D.N.Y. 2004) ..........................................................11, 13

*Bankers Trust Co. v. Rhoades,*
   859 F.2d 1096 (2d Cir. 1988)..............................................................................10

*Bernstein v. Misk,*
   948 F. Supp. 228 (E.D.N.Y. 1997) .....................................................................20

*Blanco v. AT&T,*
   90 N.Y.2d 757 (N.Y. 1997) ................................................................................12

*Butala v. Agashiwala,*
   916 F. Supp. 314 (S.D.N.Y. 1996)............................................................14, 16, 17

*Calcasieu Marine Nat'l Bank v. Grant,*
   943 F.2d 1453 (5th Cir. 1991) ........................................................................23, 24

*Cantor Fitzgerald Inc. v. Lutnick,*
   313 F.3d 704 (2d Cir. 2002)................................................................................16

*Capasso v. CIGNA Ins. Co.,*
   765 F. Supp. 839 (S.D.N.Y. 1991)...................................................................15, 18

*Certain Underwriters at Lloyd's & Zurich Specialties London Ltd. v. Milberg LLP,*
   No. 08 Civ. 7522, 2009 U.S. Dist. LEXIS 97284 (S.D.N.Y. Sept. 29, 2009) .........................15

*China Trust Bank of New York v. Standard Chartered Bank, PLC,*
   981 F. Supp. 282 (S.D.N.Y. 1997)......................................................................20

*Commerce & Indus. Ins. Co. v. Imrex Co.*,
  270 A.D.2d 147 (N.Y. App. Div. 1st Dep't 2000)..................................................24

*Campo v. Sears Holding Corp.*,
  635 F. Supp. 2d 323 (S.D.N.Y. 2009) ...................................................................4

*Dibbs v. Gonsalves*,
  921 F. Supp. 44 (D.P.R. 1996)..............................................................................19

*Elsevier Inc. v. W.H.P.R., Inc.*,
  No. 09 Civ. 6512, 2010 U.S. Dist. LEXIS 16104 (S.D.N.Y. Feb. 19, 2010) .........22

*Ezra Charitable Trust v. Frontier Ins. Group, Inc.*,
  No. 00-CV-5361, 2002 WL 87723 (S.D.N.Y. Jan. 23, 2002) .................................11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)............................................................................22, 24

*Gil v. Gil*,
  No. 09 C 3913, 2010 U.S. Dist. LEXIS 18993 (N.D. Ill. Mar. 3, 2010) ................20

*Greenman-Perdesen, Inc. v. Berryman & Henigar, Inc.*,
  No. 09 Civ. 0167, 2009 U.S. Dist. LEXIS 72884 (S.D.N.Y. Aug. 18, 2009) .........23

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009).....................................................................20

*Guar. Trust Co. of New York v. United States*,
  304 U.S. 126 (1938).................................................................................................12

*H.J., Inc. v. Nw. Bell Telegraph Co.*,
  492 U.S. 229 (1989).................................................................................................19

*Harris v. New York  State Dep't of Health*,
  202 F. Supp. 2d 143 (S.D.N.Y. 2002)........................................................... 4, 12-13

*Hibbard v. Benjamin*,
  No. 09-10361, 1992 WL 300838 (D. Mass. Sept. 21, 1992) ..................................19

*In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.*,
  815 F. Supp. 620 (S.D.N.Y. 1993)....................................................................13, 15

*In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.*,
  851 F. Supp. 556 (S.D.N.Y. 1994).........................................................................11

*Iwachiw v. New York City Board of Educ.*,
  194 F. Supp. 2d 194 (E.D.N.Y. 2002) .............................................................10, 25

*LaPorte v. LaPorte*,
    621 A.2d 186 (R.I. 1993) ....................................................................................20

*Leeds v. Meltz*,
    85 F.3d 51 (2d Cir. 1996) ....................................................................................3

*Martinez v. Martinez*,
    207 F. Supp. 2d 1303 (D.N.M. 2002) ............................................................19, 23

*In re Merrill Lynch Ltd. P'ships Litig.*,
    154 F.3d 56 (2d Cir. 1998)..................................................................10, 11, 14, 17

*Munno v. Town of Orangetown*,
    391 F. Supp. 2d 263 (S.D.N.Y. 2005)..................................................................4

*Murray v. Mulgrew*,
    No. 08-01541, 2010 U.S. Dist. LEXIS 29159 (D.D.C. Mar. 26, 2010) .................21

*Nat'l Group for Commc'ns & Computers Ltd. v. Lucent Techs., Inc.*,
    420 F. Supp. 2d 253 (S.D.N.Y. 2006)............................................................14, 17

*Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    112 F. Supp. 2d 292 (S.D.N.Y. 2000)..................................................................13

*Pohlot v. Pohlot*,
    664 F. Supp. 112 (S.D.N.Y. 1987)..................................................................18, 23, 25

*Porwick v. Fortis Benefits Ins. Co.*,
    No. 99 CV 10122, 2004 U.S. Dist. LEXIS 24432 (S.D.N.Y. Dec. 3, 2004) ...................15, 16

*Ray Larsen Assoc., Inc. v. Nikko America, Inc.*,
    No. 89-CV-2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996)..............................20

*Riddlesbarger v. Hartford Ins. Co.*,
    74 U.S. 386 (1868)............................................................................................12

*Rockwell v Ortho Pharm. Co.*,
    510 F. Supp. 266 (N.D.N.Y. 1981)......................................................................15

*Ruttenberg v. Ruttenberg*,
    No. 08 C 4898, 2009 WL 424548 (N.D. Ill. Feb. 18, 2009).................................19

*Salinger v. Projectavision, Inc.*,
    934 F. Supp. 1402 (S.D.N.Y. 1996)....................................................................11

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)..........................................................................................21

*Sheridan v. Mariuz*,
    No. 07 Civ. 3313, 2009 WL 920431 (S.D.N.Y. Apr. 6, 2009).................................................18

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)......................................................................................................4, 20

*Streck v. Peters*,
    855 F. Supp. 1156 (D. Haw. 1994).................................................................................................19

*Takeuchi v. Sakhai*,
    No. 06-CV-0818, 2007 WL 2028892 (2d Cir. July 12, 2007)......................................................11

*United States v. Aulicino*,
    44 F.3d 1102 (2d Cir. 1995)..........................................................................................................20

*United States v. Turkette*,
    452 U.S. 576 (1981).......................................................................................................................22

## STATUTES

18 U.S.C. § 1962........................................................................................................................................9

18 U.S.C. § 1964......................................................................................................................................18

28 U.S.C. 1332.........................................................................................................................................24

28 U.S.C. 1337.........................................................................................................................................24

28 U.S.C. 1367.........................................................................................................................................24

Fed. R. Civ. P. 10.......................................................................................................................................4

Fed. R. Civ. P. 41.......................................................................................................................................9

N.Y. C.P.L.R. § 203.................................................................................................................................24

N.Y. C.P.L.R. § 213.................................................................................................................................24

## PRELIMINARY STATEMENT

Defendants Steven Cohen, Donald Cohen, S.A.C. Capital Management, Inc. and Donald T. Cohen C.P.A., P.A. (collectively, the "Cohen/SAC Defendants"), by their counsel, respectfully submit this brief in support of their motion to dismiss the First Amended Complaint ("Amended Complaint" or "AC") brought by Patricia Cohen ("Plaintiff") in the above-captioned action (the "Action"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  (A copy of the Amended Complaint is attached as Exhibit A to the Declaration of Martin Klotz ("Klotz Decl."), executed May 7, 2010, submitted herewith.)

## INTRODUCTION

Plaintiff Patricia Cohen has filed a meritless and long-since time-barred RICO and fraud complaint against her former husband, Steven Cohen, in an effort to reopen state court divorce proceedings that were concluded almost twenty years ago.  This is a so-called "Amended Complaint," the original complaint ("OC") having been hurriedly withdrawn by Plaintiff's former counsel in the face of a Rule 11 sanctions motion.  The Amended Complaint, however, fails to cure the defects in the original one and is plainly designed to extort monies from Mr. Cohen.

The gravamen of the Amended Complaint is that Mr. Cohen concealed his net worth in divorce proceedings in 1988 and 1991, for which Plaintiff, some 20 years later, now seeks redress under RICO and common law fraud theories.  In an effort to turn this garden-variety, decades-old marital dispute into something more grandiose and current, the Amended Complaint posits an "SAC Criminal Syndicate" operated by Plaintiff's ex-husband, and assorted others, that supposedly continues to this day.  But the specifically alleged criminal acts of this "enterprise" – a single instance of claimed "insider trading," supposedly covered up by "bank fraud," and "money laundering" – took place in the distant past, have nothing to do with any injury claimed by

Plaintiff, and are included solely for their incendiary effect.  The Amended Complaint is legally deficient on numerous grounds and should be dismissed, with prejudice.

As an initial matter, Plaintiff's RICO claims are barred by the statute of limitations, which expires four years from the time a plaintiff knows of or could with reasonable diligence have discovered her injury.  Here, Plaintiff not only "suspected," but *affirmatively alleged*, in court papers filed in 1991, that Mr. Cohen concealed his true financial condition from her and that their earlier separation agreement should therefore be set aside on the grounds that, *inter alia,* it "was procured by fraud."  The court overseeing the divorce dismissed the fraud claim without prejudice but indicated that Plaintiff could pursue the fraud claim in a plenary action if she was "so advised."  She elected not to do so.  The facts that Plaintiff now relies on for her claims were either actually known to her or were available to anyone who looked in 1991, and her repeated protestations that she "only recently" came to suspect her husband of having misled her in the divorce proceedings cannot remedy the fatal untimeliness of her claim.  The statute of limitations exists to protect against such gamesmanship.

Timeliness aside, there are fatal defects in Plaintiff's pleading of a RICO claim.  To begin with, it is well-settled that a plaintiff's claimed entitlement to a more favorable division of assets in a state court matrimonial action does not constitute a property interest protected under RICO.  Plaintiff's assertion that she was damaged by the alleged concealment of Mr. Cohen's net worth does not state a cognizable RICO claim.

It is equally established that the alleged hiding of assets in a divorce proceeding does not constitute a "pattern of racketeering" for purposes of RICO.  Where, as here, the Amended Complaint alleges a single fraudulent scheme, allegedly affecting a single victim, and occurring over a finite period of time (the pendency of the divorce action), the alleged RICO violation simply does not present any threat of continuing criminal conduct.  The allegations that the alleged

- 2 -

scheme also violated the securities and tax laws, spurious as those contentions are, do not salvage the Amended Complaint, as under this Circuit's law only those predicate acts which cause injury to the *plaintiff* can be considered part of the requisite "pattern."

Plaintiff also has not pleaded a cognizable RICO "enterprise."  Although the "enterprise" allegedly is still operating, the Amended Complaint contains no allegations about its purpose or activities today, or indeed any of its supposed activities after 1991.  Even with respect to the acts Plaintiff complains about, which took place from 1985 to 1991, the Amended Complaint contains no factual allegations showing how the disparate cast of characters, including Mr. Cohen, his brother and his brother's accounting CPA professional corporation, together with an unaffiliated company (Gruntal) and its senior executives, and Brett Lurie and Conversion Corp. (the "Lurie Defendants"), all functioned as a single, continuing unit for a common purpose.

Finally, Plaintiff's common law fraud claim is also barred by the applicable two-year statute of limitations, which runs from when plaintiff knew or could with reasonable diligence have discovered the fraud.  Plaintiff not only could have discovered, but actually knew of her purported fraud cause of action in 1991, and her claim is long-since time-barred.

## FACTUAL BACKGROUND AND ALLEGATIONS OF THE AMENDED COMPLAINT

The Amended Complaint is filled with patently false assertions and conclusions clearly designed to embarrass Mr. Cohen and grab newspaper headlines.  Because the Amended Complaint also contains numerous fatal legal deficiencies, however, and because the law requires that factual allegations (however false) must be accepted as true for purposes of this motion,[1] this is neither the time nor the place for a point-by-point refutation of Plaintiff's false statements. However, the Court need not credit "bald assertions and conclusions of law," and allegations

---

[1]      *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

negated by Plaintiff's own prior pleadings in this or the divorce action can and should be disregarded in their entirety. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

Thus, in considering this motion to dismiss, "[t]he Court may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." *Harris v. N.Y. State Dep't of Health*, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002); *see also Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (granting a motion to dismiss, while taking judicial notice of "affidavits and/or pleadings submitted by plaintiff and letters written by plaintiff's counsel in" other actions, "as these public documents allegedly contain statements by plaintiff which contradict the factual allegations contained in the Complaint"). The Court may also consider documents incorporated by reference in the Amended Complaint, *see* Fed. R. Civ. P. 10(c); *Campo v. Sears Holding Corp.*, 635 F. Supp. 2d 323, 328 (S.D.N.Y. 2009), and documents that are "integral" to Plaintiff's claims, even if not explicitly incorporated by reference. *Harris,* 202 F. Supp. 2d at 173.

### A.    The Cohen Marriage and 1988 Divorce Proceedings

Plaintiff and Steven Cohen were married in 1979. (AC ¶ 28.) During the marriage, Mr. Cohen began working at Gruntal & Co. and became a successful trader. (AC ¶¶ 29, 64.) According to Plaintiff, she herself earned $1 million during the marriage in unspecified "real estate efforts" that she provided to Mr. Cohen for trading activities. Plaintiff allegedly confronted Mr. Cohen about insider trading allegations in 1985. (OC ¶ 23 (Klotz Decl. Ex. B).) Later, in 1986, Plaintiff became aware of a telephone records subpoena indicating an "investigation of Steve [Cohen] for insider trading" and resolved to terminate the marriage when the investigation was over. (AC ¶ 60.)

- 4 -

In July 1988, Mr. Cohen served upon Plaintiff a summons and complaint for divorce.  (AC ¶ 60.)  The first set of divorce proceedings (the "1988 Divorce Proceedings") lasted for almost two years, resulting in a Stipulation of Settlement and Separation Agreement dated December 15, 1989 (the "1989 Separation Agreement"), that was filed with the divorce court and ultimately incorporated into a Judgment of Divorce dated March 13, 1990.  (AC ¶ 73; Klotz. Decl. Exs. C, D.)

During the 1988 Divorce Proceedings, Plaintiff was provided with a Statement of Financial Condition dated July 1, 1988 (the "July 1988 Financial Schedule") that listed the net worth of Mr. and Mrs. Cohen as approximately $17 million.  (AC ¶ 65; Klotz Decl. Ex. E.)  The July 1988 Financial Schedule disclosed the value of S.A.C. Trading's "cash and marketable assets" as well as its "non-liquid assets," totaling more than $10 million.  (Klotz Decl. Ex. E.)  Plaintiff alleges that, "while Steve [Cohen] disclosed a schedule of assets that included SAC Trading, and $8,745,169 in 'Queens Coop Lurie Mortgage,' he represented that those were legitimate investment transactions that were now worthless."  (AC ¶ 65.)

Ultimately, Plaintiff and Mr. Cohen – each represented by counsel – entered into the 1989 Separation Agreement, pursuant to which Plaintiff alleges she received "$1 million in cash and an apartment they had purchased for $2,475,000."  (AC ¶ 69.)  The 1989 Separation Agreement, incorporated by reference in paragraph 69 of the Amended Complaint, provided that:

- Each party acknowledges that "complete financial disclosure . . . has <u>not</u> been obtained."  (1989 Separation Agreement ¶ 14.5 (Klotz. Decl. Ex. C) (emphasis added).)

- Each party nonetheless "has acknowledged a degree of familiarity with and knowledge of the financial circumstances of the other and each party is of the opinion that he and she are sufficiently informed of income, assets, property and financial prospects of the other. Husband has provided Wife with his net worth statement and the statement of financial condition dated as of July 1, 1988, provided, however, **that Husband makes no representation as to the value of the interest in a second and third**

> **mortgage on various properties involved in a cooperative conversion in Queens, New York in which the investment was listed on his statement of financial condition dated as of July 1, 1988 at a value of $8,745,169."** (*Id.* ¶ 14.4 (emphasis added).)

■   The Separation Agreement is "fair and reasonable." (*Id.* ¶ 14.7.)[2]

### B. Plaintiff's 1991 Attempt to Set Aside the 1989 Separation Agreement On the Basis of Fraud and Duress.

On March 21, 1991, barely a year after the divorce judgment, Plaintiff sought to set aside the 1989 Separation Agreement on the grounds of "fraud and economic duress" (the "1991 Fraud Proceedings"). (Klotz Decl. Ex. F.) To support that motion, Plaintiff and her lawyer filed sworn affidavits in the New York Supreme Court asserting that Mr. Cohen had concealed his financial condition in the 1988 Divorce Proceedings. Plaintiff's March 20, 1991 affidavit asserted:

> Although the separation agreement was executed on December 15, 1989, plaintiff *would not disclose his income for 1989* and insisted upon filing a separate income tax return. Because we were still married, and there were fifteen days left in the year, plaintiff could have filed a joint return with me. **However he chose to file under married filing separately even though it meant paying a higher tax. I must assume that he did this because he did not want to disclose his substantially increased income. This failure to disclose by itself should be sufficient to set aside the maintenance and support provisions of the Separation Agreement.** Upon information and belief, because the stock market has risen substantially in 1991, and has been active and volatile, plaintiff has made a record amount of money in the first three months of 1991.

(Klotz Decl. Ex. G ¶ 4 (emphasis added).) Plaintiff's then counsel, Martin Kera, also filed an affirmation dated May 8, 1991, on Plaintiff's behalf ("Kera 1991 Aff."), explicitly alleging that Mr. Cohen had concealed his financial circumstances:

> **[Mrs. Cohen] is entitled to an inference that plaintiff did not disclose his finances because it would reveal that he made more money than he is stating in his affidavit in opposition. . . . He does not want to truthfully disclose his income. He didn't want to disclose it during the**

---

[2]   Paragraph 14.10 of the 1989 Separation Agreement also contains a mutual general release.

matrimonial proceedings and he is refusing to disclose it now before the Court.

Defendant and I believe that Mr. Cohen has not truthfully stated his income.  Upon information and belief, Mr. Cohen did one of the following: (1) had payments of his income made to his wholly owned corporation, S.A.C. Trading Corp., (2) had payments of his income made directly to his brother Donald, who is his accountant, or (3) deferred payment of his compensation to a later year so that his income tax return during 1989 did not show his true income. . . . I have subpoenaed Mr. Cohen's earnings records from Gruntal.  They show earnings of over $7.5 million for 1990 but only $3,060.52 in 1991 through April 15, 1991.  Obviously, Mr. Cohen is receiving his money other than directly from Gruntal.  See Exhibit E.

(Klotz Decl. Ex. H ¶ 4 (emphasis added).)[3]

The Amended Complaint asserts that, "to create the impression that SAC Trading was merely a shell company" and Mr. Cohen "merely an employee" of Gruntal, and to further conceal from her "the substantial value and assets he had developed in SAC Trading," Mr. Cohen had SAC's traders transferred to Gruntal and put on Gruntal's payroll with substantial pay increases. (AC ¶¶ 61, 62, 63, 68, 74, 80, 100, 102-03.)  In dramatic fashion, the Amended Complaint includes a chart (the "Gruntal Payroll Chart") showing six traders, their pay increases and the total of their new pay (AC ¶ 62), and proclaims that "Patricia remained unaware that Steve had concealed his business and engineered a fraudulent and misleading transfer of employees to deceive her.  Nor could she have known."  (AC ¶ 86.)

This allegation is directly contradicted by her lawyer's affidavit in 1991, which attached the *identical information* from the Gruntal Payroll Chart that she now – remarkably – claims was

---

[3]     Mr. Kera's May 8, 1991 affirmation also addressed the value of the $8.7 million Brett Lurie mortgage investment by S.A.C. Trading and the loss of that investment:  "What is also unstated is the fact that Mr. Cohen manages money worse than Mrs. Cohen.  *By his own admission in paragraph 16, page 9 of his affidavit, Mr. Cohen lost $8,745,169 in a real estate deal with Brett Lurie.*"  (Klotz Decl. Ex. H ¶ 6.)  Thus, Plaintiff knew by 1991, if not much earlier, that the $8.7 million from the Lurie deal was "lost" or, as she now characterizes it, "dissipated."  (AC ¶¶ 11, 70.)

concealed from her.  Lawyer Kera's May 8, 1991 affirmation attached records subpoenaed from

Gruntal, including a September 27, 1988 letter (the "September 27, 1988 Payroll Letter") from

Donald Cohen (Mr. Cohen's brother and his accountant) to Edward Bao (at Gruntal) requesting

> with regards to payments to S.A.C. Trading, Inc., *that we convert his traders to full payroll with Gruntal*.  The following is the amount we need to increase the traders salaries in addition to the $833.33 which Gruntal paid them monthly. . . John Troubh – $8,333.33, Steve Mark – $8,333.33, William Nietzel – $5,416.67, Tim Anderson – $5,416.67, Steve Heineman –$3,333.33, Seth Kanegis – $4,166.67.

(*See* Klotz Decl. Ex. H (Kera 1991 Aff. Ex. E).)  This letter was filed with the divorce court in

1991 by Plaintiff to support the specific allegation that Steven Cohen had income other than his

Gruntal income and was using S.A.C. Trading as the conduit for this undisclosed income, the

identical allegation that she makes today.  (AC ¶¶ 63, 86-88.)

On August 6, 1991, the divorce court (Schackman, J.) ruled as follows:  "That part of

[Mrs. Cohen's] motion to set aside the separation agreement on the grounds that it was procured

by fraud and economic duress is permitted to be withdrawn without prejudice to institute a

separate plenary action on this basis if [Mrs. Cohen] is so advised."  (Klotz Decl. Ex. I.)

**Mrs. Cohen chose not to commence such an action.**  Rather, on January 6, 1992, the parties

executed an amended Separation Agreement, providing for increased child support payments and

reaffirming the fairness of the couple's prior division of marital property and Patricia Cohen's

waiver of separate maintenance.  (AC ¶ 78; Klotz Decl. Ex. J.)[4]

### C.    Plaintiff's Original Complaint

On December 16, 2009, Plaintiff filed a two-count complaint alleging that Mr. Cohen, his

brother and other SAC entities had violated the federal RICO statute.  The central theory of the

---

[4]    The amended Separation Agreement also reaffirmed the prior mutual releases and added a new covenant by Patricia Cohen not to sue Steven Cohen in the future.

Original Complaint was that the Queens mortgage transaction with Brett Lurie, valued as an asset of $8,745,169 on the July 1988 Financial Schedule, was not, in fact, "worthless."  Defendants served a motion for sanctions under Rule 11 and, the very next day, counsel voluntarily dismissed the Original Complaint pursuant to Fed. R. Civ. P. 41(a).

### D.  The Amended Complaint

On April 7, 2010, Plaintiff filed an "Amended" Complaint asserting a violation of RICO Section 1962(c), 18 U.S.C. § 1962(c), and Section 1962(d), 18 U.S.C. § 1962(d), and a claim for common law fraud.

It is difficult to parse Plaintiff's theory of how she was defrauded, because the allegations about the supposed fraud are vague, contradictory, and inconsistent with other facts she has pleaded now or previously.  With respect to the Lurie investment, for example, Plaintiff sometimes appears to acknowledge that the investment was largely worthless – which in fact it was – and to allege that, had she known the loss was a reckless and ham-handed effort to conceal proceeds of insider trading, she would have insisted that her former husband take this worthless asset as his half of marital assets, leaving her with everything of value.  (*See* AC ¶¶ 11, 70.)[5]  At other times, Plaintiff seems to allege that, rather than being worthless, the Lurie investment was actually worth $17.5 million, about twice what was listed on the July 1988 Financial Schedule. (AC ¶ 99.)  However, she does not allege how or why that was the case.  Nor does she allege that the July 1988 Financial Schedule, which discloses S.A.C. Trading Corp. as having a value in excess of $10 million – of which $8.7 million was expressly attributed to the Lurie investment – was false in that or any other specific respect.  Indeed, although Plaintiff alleges that S.A.C.

---

[5]     Of course, Plaintiff specifically argued in 1991 that Steven Cohen squandered the Lurie money (AC ¶ 75), so this theory does not explain why she is entitled to revive the "dissipation" argument 20 years later.

Trading Corp. was a "going concern" rather than a "shell" (AC ¶¶ 9, 63), she does not identify a single specific asset of S.A.C Trading Corp. that was concealed from her.

The Amended Complaint also includes allegations about Steven Cohen's alleged insider trading, and supposed attempts to "launder" the resulting profits. It does not explain why anyone would attempt to "launder" money that the government, according to the Amended Complaint, already knew about and had under investigation. For good measure, Plaintiff throws in a 15-paragraph discussion of an alleged scheme by Mr. Cohen, never carried out, to take an improper tax deduction (AC ¶¶ 43-58), and the gratuitous observation that Edward Bao and Brett Lurie were convicted of crimes unrelated to anything in the Amended Complaint. None of these allegations of criminal conduct has anything to do with Mr. Cohen or the S.A.C. Defendants, or any injury supposedly sustained by Plaintiff.

## ARGUMENT

## I.   THE AMENDED COMPLAINT DOES NOT STATE A RICO CLAIM.

### A.   The RICO Claims Are Barred by the Statute of Limitations.

Civil RICO claims are subject to a four-year statute of limitations, which begins to run once a plaintiff "discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988) (same).[6] Thus, where a plaintiff knows or suspects she has been injured by fraud, the statute of limitations begins to run. *See Iwachiw v. N.Y.C. Bd. of Educ.*, 194 F. Supp. 2d 194, 204 (E.D.N.Y. 2002) (civil RICO claim was time-barred because of plaintiff's "suspicion of bid rigging" more than four years before plaintiff brought RICO claims); *Takeuchi v. Sakhai*,

---

[6]   RICO has no express statutory limitations period. As explained by the Supreme Court in *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, RICO's four-year limitations period is based on the analogous Clayton Act, which provides that a claim for a federal antitrust violation must be commenced "within four years after the cause of action accrued," 15 U.S.C. § 15b  *See Agency Holding*, 483 U.S. 143, 150, 156 (1987).

No. 06-CV-0818, 2007 WL 2028892, at *1 (2d Cir. July 12, 2007) (plaintiffs were on notice of

any possible RICO injury when they were put on notice of possible misrepresentations); *In re*

*Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.,* 851 F. Supp. 556, 567 (S.D.N.Y. 1994)

("The limitations period for a fraud-based RICO action commences when Plaintiffs are placed on

notice of facts which should arouse suspicion.").  The test is "an objective one and dismissal is

appropriate when the facts from which knowledge may be imputed are clear from the pleadings

and the public disclosures themselves."  *Salinger v. Projectavision, Inc*., 934 F. Supp. 1402, 1408

(S.D.N.Y. 1996); *see also In re Merrill Lynch*, 154 F.3d at 60.

Resolution of a motion to dismiss on statute of limitations grounds is particularly

appropriate where prior statements and pleadings by the plaintiff establish that he or she suspected

fraud beyond the limitations period, notwithstanding contrary allegations in the current complaint.

Thus, "Courts within this jurisdiction have found that plaintiffs' affidavits admitting actual

knowledge of frauds at dates certain may be treated as judicial admissions leading to the dismissal,

under the statute of limitations, of even amended complaints that later attempt to place the

knowledge of the fraud within the confines of the relevant statute."  *Babaev v. Grossman*, 312 F.

Supp. 2d 407, 409 (E.D.N.Y. 2004).  *See also Ezra Charitable Trust v. Frontier Ins. Group, Inc.*,

No. 00-CV-5361, 2002 WL 87723 (S.D.N.Y. Jan. 23, 2002) (taking judicial notice of a document

with a statement from defendant that was filed in an earlier legal proceeding and dismissing claims

as time-barred).

The significance of the statute of limitations should not be lost in a case alleging

wrongdoing going back 25 years.  Many years ago, the United States Supreme Court observed that

statutes of limitation:

> are founded upon the general experience of mankind that claims,
> which are valid, are not usually allowed to remain neglected.  The
> lapse of years without any attempt to enforce a demand creates,

> therefore, a presumption against its original validity, or that it has
> ceased to subsist. . . .  [T]hey thus become statutes of repose,
> protecting parties from the prosecution of stale claims, when, by
> loss of evidence from death of some witnesses, and the imperfect
> recollection of others, or the destruction of documents, it might be
> impossible to establish the truth.

*Riddlesbarger v. Hartford Ins. Co.*, 74 U.S. 386, 390 (1868).

These observations are no less true today.  As the New York Court of Appeals has affirmed, statutes of limitation are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  *Blanco v. AT&T*, 90 N.Y.2d 757, 773 (N.Y. 1997) (citations omitted).  Other considerations include "promoting repose by giving security and stability to human affairs . . . judicial economy, discouraging courts from reaching dubious results," and "the perceived unfairness to defendants of having to defend claims long past."  *Id.* at 773 (internal quotation marks, alterations, and citations omitted).  For these and other reasons, both the Supreme Court and the courts of New York have long regarded the statute of limitations "as a meritorious defense, in itself serving a public interest."  *Guar. Trust Co. of N.Y. v. United States*, 304 U.S. 126, 136 (1938).

If ever there were a case for application of the statute of limitations, this is it.

As discussed earlier, Plaintiff asserted, in sworn affidavits submitted to the New York Supreme Court during the 1991 Divorce Proceedings, that she believed she was being defrauded by Mr. Cohen.[7]  The divorce court permitted Plaintiff to withdraw that part of her motion to set

---

[7] In addition to being able to take judicial notice of the 1991 affirmations as prior pleadings, the Court may properly consider them here because the present Complaint incorporates them by reference.  Plaintiff refers to her motion to set aside the Separation Agreement and to a May 16, 1991 affidavit submitted by Mr. Cohen in response to that motion.  (AC ¶¶ 73-74.)  The 1991 Divorce Proceedings are therefore integral to Plaintiff's claims and their true and complete contents may be considered by the Court here even if those particular affirmations were not explicitly incorporated by reference.  *See Harris*, 202 F.

aside the Separation Agreement that was based on fraud, without prejudice to her right to institute a separate plenary action on that basis.

Plaintiff elected not to institute an action for fraud.  Now, almost 20 years later, Plaintiff alleges, incredibly, that it was "only recently" that she had "reason to investigate Steve . . . ." (AC ¶ 89.)  But she and her new counsel cannot now avoid the impact of her 1991 motion and affirmations demonstrating her belief, at that time, that she had been defrauded.  *See Ainbinder v. Kelleher*, No. 92 Civ. 7315, 1997 U.S. Dist. LEXIS 10832, at *13 (S.D.N.Y. July 25, 1997) ("[d]espite plaintiff's current claims to the contrary, an affidavit signed by plaintiff on June 7, 1989 shows that he had knowledge of the alleged fraud by that date . . . ."); *Babaev*, 312 F. Supp. 2d at 410 ("The toothpaste of an admission of actual knowledge of fraud should not so easily be squeezed back into the tube.").

It does not matter if Plaintiff may not have known all the details of the fraud she alleged in the 1991 Fraud Proceedings; a general belief that Mr. Cohen was hiding financial information was sufficient to trigger the statute of limitations.  *See Salinger,* 934 F. Supp. at 1408 ("[p]laintiffs need not be able to learn the precise details of the fraud," but need only "be capable of perceiving the general fraudulent scheme based on the information available to them.").  The statute of limitations "is not tolled for a plaintiff's leisurely discovery of the full details of the alleged scheme.  Instead, the period runs from the time at which a plaintiff should have discovered the general fraudulent scheme."  *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 815 F. Supp. 620, 637 (S.D.N.Y. 1993) (internal quotations and citations omitted).  Thus, Plaintiff's

---

Supp. 2d at 173; *Nat'l W. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 112 F. Supp. 2d 292, 299-301 (S.D.N.Y. 2000) (when a plaintiff refers to and relies upon a document in its complaint, the entirety of that document may be considered by the Court in a motion to dismiss so long as it is clear from the complaint that the plaintiff had access to the entire document), *vacated on other grounds*, 89 Fed. App'x 287 (2d Cir. 2004).

detailed assertions in the 1991 Fraud Proceedings that Mr. Cohen was refusing to disclose his true

income, was likely diverting money to S.A.C. Trading Corp., or had payments of his income made

directly to his brother and accountant Donald Cohen (also a defendant in this action), or had

deferred payment of his compensation to a later year so that his 1989 income tax return

understated his income, and was guilty of "fraud" justifying setting aside the Separation

Agreement, were more than enough to count as knowledge of her present claims of fraud.

Moreover, Plaintiff unquestionably had the ability to flesh out the details of her fraud claim

in either the 1988 Divorce Proceedings or the 1991 Fraud Proceedings, or both – or in the plenary

action the court invited her to bring if "so advised."  In any one of these proceedings, Plaintiff had

the ability to compel the production of party and non-party documents, take depositions, and

obtain further details of Mr. Cohen's finances to support her claim of fraud.

Plaintiff's "fraudulent concealment" and "equitable tolling" allegations do not rescue her

untimely claim.  (*See* AC ¶¶ 83-93.)  To properly plead fraudulent concealment, Plaintiff must

allege:  "(1) wrongful concealment by [defendants], (2) which prevented [plaintiff's] discovery of

the nature of the claim within the limitations period, and (3) due diligence in pursuing the

discovery of the claim."  *In re Merrill Lynch*, 154 F.3d at 60.  Moreover, "Plaintiff must plead

each of these elements with particularity as required by Rule 9(b)."  *Nat'l Group for Commc'ns &*

*Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 265 (S.D.N.Y. 2006).  Merely

conclusory allegations of fraudulent concealment do not toll the statute of limitations.  *Butala v.*

*Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996).  The burden of pleading fraudulent

concealment "rests squarely" on the plaintiff.  *131 Main St. Assocs. v. Manko*, 179 F. Supp. 2d

339, 346 n.9 (S.D.N.Y. 2002)

Plaintiff has not adequately alleged fraudulent concealment or a basis for equitable tolling.

First, she does not allege any affirmative misrepresentations that prevented her from pursuing a

claim.[8]  Mr. Cohen's statement that "I do not and cannot" "disguise my income" because he was

"merely an employee of Gruntal" (AC ¶ 74), in addition to being true when said, is a "'mere

denial of wrongdoing" which does not prevent running of the statute "because the defendant 'is

not legally oblig[ated] to make a public confession, or to alert people who may have claims

against it to get the benefit of the statute of limitations."  *Certain Underwriters*, 2009 U.S. Dist.

LEXIS 97284, at *8-9 (citations omitted and alterations in original).  *See also Integrated Res.,* 815

F. Supp. at 640 ("[N]either reassurances accompanying the relevant notice nor the continued

failure to disclose the facts allegedly misrepresented in the first place, relieves the plaintiff of his

duty to undertake reasonable inquiry or tolls the statute of limitations.").

Mr. Cohen's alleged statements that there was no way to recover any money from Lurie

through litigation (AC ¶¶ 66, 88, 98) – statements that also proved true – could not have concealed

anything, either.  To begin with, Mr. Cohen fully disclosed the product of the 1987 Lurie litigation

settlement – mortgages totaling $8.7 million involving coop apartments in Queens, New York,

that he received in the litigation settlement – in the July 1988 Financial Schedule.  Moreover, as

Plaintiff admits, the litigation file itself, including the affidavits in that action that contained

"critical evidence" "necessary to her claims," was a matter of "public record" (AC ¶ 88), having

---

[8]      Unless the parties have a fiduciary relationship, the plaintiff must show that defendant
made an actual misrepresentation beyond a mere denial of wrongdoing or a failure to
disclose.  *See Certain Underwriters at Lloyd's & Zurich Specialties London Ltd. v.
Milberg LLP*, No. 08 Civ. 7522, 2009 U.S. Dist. LEXIS 97284, at *9 (S.D.N.Y. Sept. 30,
2009); *Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122, 2004 U.S. Dist. LEXIS
24432, at *19 (S.D.N.Y. Dec. 6, 2004); *Rockwell v. Ortho Pharm. Co.*, 510 F. Supp. 266,
270-271 (N.D.N.Y. 1981).  Plaintiff does not and could not allege a fiduciary duty between
parties to an adversarial divorce proceeding.  *See Capasso v. CIGNA Ins. Co.*, 765 F. Supp.
839, 841 (S.D.N.Y. 1991) (spouse's failure to disclose details of his business activities
during and after adversarial divorce proceedings could not form basis for RICO fraud
claim because spouse had no fiduciary duty to disclose).

been filed in 1987 in the New York Supreme Court and settled that same year.  (AC ¶ 57; *see* OC ¶ 49 (Klotz Decl. Ex. B).)  Nothing in the Lurie litigation was filed under seal.  Plaintiff was well aware that Mr. Cohen lost millions of dollars investing with Lurie (AC ¶¶ 65, 68, 75; Klotz Decl. Ex. H ¶ 6), and all of the information about the Lurie litigation identified in the Amended Complaint was publicly available to Plaintiff (and her various lawyers) prior to, during, and at all times subsequent to the divorce action.[9]

Similarly, what Plaintiff calls the "critical evidence" concerning the "misleading transfer of employees" from SAC to Gruntal "to deceive her" (AC ¶¶ 86-87) was not only not concealed from her, but was *disclosed* to her, in the divorce action.  (Klotz Decl. Ex. H (Kera Aff. Ex. E).)

More fundamentally, Plaintiff's fraudulent concealment/equitable tolling theory is totally inapplicable given that, despite Mr. Cohen's alleged efforts to conceal his finances, Plaintiff claimed in 1991 that Mr. Cohen was defrauding her, thereby demonstrating that she was on notice of a claim.  "The doctrine of fraudulent concealment [for tolling the statute of limitations] does not come into play, *whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.*"  *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 713 (2d Cir. 2002) (citations omitted, emphasis added, alteration in original); *see also 131 Main Street Assocs.,* 179 F. Supp. 2d at 348 (same); *Porwick*, 2004 U.S. Dist. LEXIS 24432, at *19-20 (noting that statute is not tolled for "a plaintiff who possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations.") (citations and internal quotation marks omitted); *Butala*, 916

---

[9]    In any event, apart from the settlement amount, fully reflected in the July 1988 Financial Schedule, nothing that Plaintiff claims recently to have "discovered" in the Lurie litigation file actually relates to her claimed injury.  She cites the litigation record principally to show that Mr. Cohen contemplated, but never carried out, what she claims would have been an improper tax deduction.

F. Supp. at 319 ("If plaintiff was indeed alerted as to the probability of fraud, the court must . . .

ascertain whether he or she exercised due diligence in investigating the potential fraud.").

Plaintiff's allegations of due diligence are woefully deficient on their face. The Amended

Complaint vaguely states that her investigation began "only recently," and does not contain a

single particularized allegation that she ever made any attempt from 1991 to October 2007 to

investigate a potential RICO claim. (AC ¶¶ 89-90.) Courts routinely dismiss fraudulent

concealment allegations that fail to allege what efforts were made by plaintiffs to investigate the

alleged RICO violation. *See, e.g.*, *In re Merrill Lynch*, 154 F.3d at 60 (affirming dismissal of

fraudulent concealment allegations because plaintiffs did not allege that they made "any specific

inquiries of [defendants], let alone detail when such inquiries were made, to whom, regarding

what, and with what response"); *Nat'l Group*, 420 F. Supp. 2d at 268 ("The third element requires

due diligence by plaintiff *throughout* the period to be equitably tolled, and [plaintiff] has not

alleged with any specificity what efforts it made to investigate a RICO cause of action . . . .");

*Butala*, 916 F. Supp. at 319-20 ("Therefore, for the plaintiffs to assert fraudulent concealment and

toll the statute of limitations, they must demonstrate that the defendants prevented them from

investigating the fraud *in spite of* the plaintiffs' exercise of due diligence.") (emphasis in original).

Plaintiff offers no explanation of how she was prevented by Mr. Cohen from investigating

her fraud claim during the 1988 Divorce Proceedings, the 1991 Fraud Proceedings, or for some

16 years thereafter. Indeed, Plaintiff does not even allege a single act of concealment that post-

dates 1992. Instead, Plaintiff's case rests on the assertion that public documents were somehow

hidden, that information actually disclosed 20 years ago was somehow concealed, and that a

plaintiff who asserted a fraud in court papers in 1991 never thought of such a claim until now.

Her fraudulent concealment claim fails and the statute of limitations bars her RICO claim.

**B.**      **Plaintiff Has Not Alleged Any RICO Injury to Her Business or Property.**

The RICO statute limits private actions to those by "[a]ny person injured in his *business or property* by reason of a violation of [the RICO Act's substantive provisions]."  18 U.S.C. § 1964(c) (emphasis added).  Here, Plaintiff does not allege any injury to a "business" interest, and thus her RICO claim must be predicated on alleged injury to her "property."  But as a matter of law she cannot establish such injury because her claim is premised on a mere expectancy interest, *i.e.*, an alleged entitlement to a greater share of assets in the divorce action, which is wholly insufficient to confer RICO standing.  *See Capasso*, 765 F. Supp. at 842 (wife's "mere expectation that she might be awarded some share in her husband's property is too speculative to support a RICO claim"); *Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987) ("Plaintiff's mere expectation of a favorable decree awarding her a share of [her husband's] assets in the state court matrimonial action does not constitute a property interest protected under RICO.").  As the court stated in *Sheridan v. Mariuz*, No. 07 Civ. 3313, 2009 WL 920431 (S.D.N.Y. Apr. 6, 2009):

> [T]he claim in the instant case is predicated upon an assumption that a larger marital settlement award could have been awarded to the Plaintiff had the Defendants not committed the alleged RICO activity. . .  Similar to the dismissal of the RICO claim in *Pohlot* due to the absence of a cognizable property interest protected by the RICO statute, the RICO claim in this case should also be dismissed due to the similar absence of a protected property interest under the terms of the RICO statute.

*Id.* at *8 (citation omitted).[10]

---

[10]      Plaintiff does not solve this problem by claiming, for the first time now, that nearly $1 million of the money Mr. Cohen began trading with was "her" money, the "earnings" from unspecified "real estate activities."  (AC ¶¶ 29, 31).  In fact, Plaintiff's alleged "real estate efforts" were nothing more than the product of the couple's purchases and sales of successive residences in a rising real estate market, joint decisions for which Plaintiff apparently takes sole credit.  But even crediting the allegation that it was "her real estate efforts" that produced this money, Plaintiff's "earnings" would go into the same pot of "marital assets" as Steven Cohen's more extensive earnings, all subject to equitable distribution pursuant to the 1989 Separation Agreement.  Plaintiff had only an expectancy interest, not a vested property interest, in that equitable distribution.

Thus, Plaintiff has not even established the basic threshold for a RICO claim – standing to sue based on an injury to her business or property – and the RICO claim should be dismissed for this reason alone.

### C.        Plaintiff Has Not Pleaded a "Pattern" of Racketeering Activity.

Plaintiff's section 1962(c) claims also fail because Plaintiff has not adequately alleged the "pattern" element.  As the Supreme Court has cautioned, a "pattern of racketeering activity" means at least two predicate acts that "are related, *and* that . . . amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis added).  Plaintiffs' allegations do not establish a pattern here.

Courts across the country routinely hold that allegations that a spouse was concealing assets in a divorce proceeding do not satisfy the "pattern" element.  *See, e.g., Ruttenberg v. Ruttenberg*, No. 08 C 4898, 2009 WL 424548, at *4 (N.D. Ill. Feb. 18, 2009) ("[T]he sort of fraud involved in hiding assets in connection with a divorce does not constitute a pattern of racketeering for purposes of RICO.") (collecting cases); *Martinez v. Martinez*, 207 F. Supp. 2d 1303, 1306-07 (D.N.M. 2002) (alleged conspiracy by former husband to hide marital assets "simply [does] not present any threat of continuing racketeering activity"), *aff'd in relevant part,* 62 F. App'x 309, 313 (10th Cir. 2003); *Hibbard v. Benjamin*, No. 09-10361, 1992 WL 300838, at *3 (D. Mass. Sept. 21, 1992) (scheme to routinely extort fees from divorcing husbands revolved around a single criminal scheme and did not establish facts sufficient to show a "pattern of racketeering activity").[11]

---

[11]     *See also Streck v. Peters*, 855 F. Supp. 1156, 1166 (D. Haw. 1994) (predicate acts aimed at disrupting divorce proceedings and forcing spouse to divulge alleged "secret funds and incomes" did not constitute pattern of racketeering); *Dibbs v. Gonsalves*, 921 F. Supp. 44, 50 (D.P.R. 1996) (assertions that ex-spouse hid marital assets through mail fraud, wire fraud, and money laundering are insufficient to state RICO "pattern"); *Abernathy v. Erickson*, 657 F. Supp. 504, 509 (N.D. Ill. 1987) (scheme to defraud former spouse out of

- 19 -

These holdings are consistent with the proposition that alleged RICO schemes involving a single victim and a natural termination point – such as a divorce action – establish neither the "open-ended" or "closed-ended" continuity necessary to allege a "pattern." *See, e.g.*, *United States v. Aulicino*, 44 F.3d 1102, 1113 (2d Cir. 1995) (no pattern alleged where "a defendant had a piece of property the sale of which, even if by fraudulent means, provided a natural end to his project"); *Bernstein v. Misk*, 948 F. Supp. 228, 237 (E.D.N.Y. 1997) (alleged acts of mail and wire fraud committed in connection with an isolated real estate venture which has been, or will be terminated, posed no threat of continued criminal conduct); *China Trust Bank of N.Y. v. Standard Chartered Bank, PLC*, 981 F. Supp. 282, 287 (S.D.N.Y. 1997) (alleged fraud on a single account was inherently terminable and did not support a threat of open-ended continuity); *Gross v. Waywell*, 628 F. Supp. 2d 475, 494 (S.D.N.Y. 2009) (allegations of RICO violations involving "a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property . . . are generally insufficient to demonstrate closed-ended continuity").

Here, the alleged scheme involved a single alleged victim, and was limited to a single divorce action with a natural end point.  That the Amended Complaint alleges that assets were also concealed from the IRS and SEC (however illogical, since the allegedly illegal stock trades were known to the government) does not advance Plaintiff's "pattern" claim.  Only predicate acts which *allegedly injured plaintiff* can be considered as part of the "pattern."  *See Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89-CV-2809, 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996); *Spool*, 520 F.3d at 184.  Thus, the allegations of insider trading and a cover-up, in addition to being

property did not constitute pattern of racketeering); *LaPorte v. LaPorte*, 621 A.2d 186, 186 (R.I. 1993) ("[W]ilful concealment of marital assets from the Family Court, in our opinion, does not constitute 'racketeering activity.'"); *Gil v. Gil,* No. 09 C 3913, 2010 U.S. Dist. LEXIS 18993, at *16 (N.D. Ill. Mar. 3, 2010) (spousal asset concealment failed to allege pattern; "Like so many unsuccessful RICO claims, this case appears to be a fraud case (or a divorce settlement feud), garden variety or otherwise, that belongs in state court.").

spurious, cannot constitute part of a pattern of racketeering activity because those alleged actions were not directed at Plaintiff, had nothing to do with her, and did not injure her.

Indeed, the judicial hostility to allowing extraneous predicate acts, not directed at plaintiff and not injuring plaintiff, to extend the RICO "pattern" finds expression in the similar principle that only predicate acts that proximately harm the plaintiff can give rise to a RICO claim. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[P]laintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by the conduct constituting the [RICO] violation*.") (emphasis added). This principle was recently applied in a strikingly similar case to this one, *Murray v. Mulgrew*, No. 08-01541, 2010 U.S. Dist. LEXIS 29159 (D.D.C. Mar. 26, 2010). In *Murray*, plaintiff alleged, as a RICO predicate act, that her husband defrauded his employer, NatWest Bank, out of $7.5 million and concealed the proceeds of the scheme from both the bank and her. She contended that her former husband's "concealment of his activities were 'part and parcel of [his] racketeering activity.'" *Id.* at *6-7. The court rejected this contention, holding that plaintiff failed to allege a causal relationship between her husband's actions (stealing money from NatWest) and her injury (a reduced award in the divorce). *Id.* at *8.

Here, too, Plaintiff was not injured by the alleged insider trading. Nor was she injured by the supposed money laundering, the purpose and effect of which was not to conceal the existence of the money, but rather allegedly to alter its character (from taxable investment to tax-deductible salary) from the IRS. (AC ¶¶ 42-54.) Thus, Plaintiff was not proximately harmed by the alleged predicate acts, and no RICO claim can be based upon them.[12]

---

[12] The same is true of Plaintiff's allegations that various defendants committed "bank fraud" by drawing, endorsing and depositing checks with false memo descriptions such as "payroll" and "loan-investment refund." (AC ¶ 108.) Putting aside the fact that defendants did not defraud the banks out of anything, and thus did not commit "bank

### D.    The Amended Complaint Does Not Adequately Allege a RICO "Enterprise."

The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an *ongoing organization*, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added); *see also Elsevier Inc. v. W.H.P.R., Inc.*, No. 09 Civ. 6512, 2010 U.S. Dist. LEXIS 16104, at *17 (S.D.N.Y. Feb. 19, 2010) (enterprise must have a purpose, relationships among the individuals associated with the enterprise, and longevity sufficient to permit the associates to pursue the purpose of the enterprise) (citing *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009)).

Although Plaintiff alleges that the so-called "SAC Criminal Syndicate" continues to this day, she makes no attempt to address its organization, purpose, or even any of its activities after 1991.  But, even with respect to the distant past – 1985-1991 – Plaintiff's enterprise allegations do not pass muster.

*First*, the Amended Complaint merely makes the conclusory assertion, with no supporting facts, that the various defendants (some of whom, such as the Lurie Defendants and Gruntal, have no relationship whatsoever to one another), constituted a single "enterprise."  This is insufficient.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) ("Plaintiffs' conclusory naming of a string of entities does not adequately allege an enterprise.") (internal quotation marks omitted).

---

fraud," these alleged check misdescriptions clearly caused no injury to Plaintiff.  As for the claims of wire and mail fraud, almost all of them relate to the alleged scheme to launder insider trading profits to Lurie.  (AC ¶ 108.)  The remaining allegations concern the alleged effort to conceal SAC Trading's operations and value by transferring its employees over to Gruntal, but as discussed above, Plaintiff was aware of those transfers.

*Second*, the Amended Complaint never explains how this alleged enterprise functioned as an ongoing, integrated unit with a common purpose.  *See Greenman-Perdesen, Inc. v. Berryman & Henigar, Inc.*, No. 09 Civ. 0167, 2009 U.S. Dist. LEXIS 72884, at *16 (S.D.N.Y. Aug. 18, 2009) (finding there was no enterprise where plaintiffs "failed to make any plausible allegation that the defendants . . . associated for a common illegal purpose and then worked together to achieve that purpose").  How and why Gruntal and Lurie, for example, shared a common purpose to conceal marital assets from Plaintiff, or why Lurie wanted to promote Steven Cohen's supposed insider trading, is left entirely to the imagination.  Indeed, the Amended Complaint alleges that the relationship between Steven Cohen and Brett Lurie "became more embittered," that Mr. Cohen filed a lawsuit in 1987 against Lurie, and "placed liens on Lurie's properties, nearly forcing him into bankruptcy."  (AC ¶¶ 51, 57.)  These allegations are inconsistent with any common purpose.

*Third*, the short-lived nature of the divorce action precludes a finding of a continuous RICO "enterprise."  In similar circumstances, courts have rejected allegations of an "enterprise" allegedly formed to deprive a spouse of marital assets in a divorce proceeding.  *See Pohlot*, 664 F. Supp. at 117-18; *Martinez*, 207 F. Supp. 2d at 1303; *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991).

In *Pohlot*, this Court held that a husband's attempt, in concert with others, to have his wife murdered to avoid an award of a substantial portion of his assets did not constitute a RICO enterprise.  The various associates of the scheme "did not function as a continuing unit to dispose of litigious spouses for hire; their plan was to procure the murder of one wife and then disband." *Pohlot*, 664 F. Supp. at 118.  Similarly, in *Martinez*, allegations that defendants "conspired together to hide . . . income and property from the state court, in order to prevent Plaintiff from receiving her proper share of the community assets" could not support a RICO claim because a separate enterprise with sufficient indicia of continuity was missing.  207 F. Supp. 2d at 1306.  *See*

*also Calcasieu*, 943 F.2d at 1462 (enterprise allegations failed where husband's fraudulent taking of wife's interest was "only a single, short-term goal").

### E.    The Amended Complaint Does Not State A Claim Under Section 1962(d).

Plaintiff has failed to allege an underlying section 1962(c) violation of the RICO statute. Accordingly, no section 1962(d) claim can be sustained.  *See First Capital*, 385 F.3d at 182; *Allen v. New World Coffee, Inc.*, No. 00-Civ-2610, 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on.").

## II.    THE FRAUD CLAIM SHOULD BE DISMISSED.

The statute of limitations for common law fraud claims in New York is six years from the date the cause of action accrued or two years from the time the plaintiff "discovered the fraud, or could with reasonable diligence have discovered it," whichever is longer.  N.Y. CPLR §§ 213(8) & 203(g).  Here, as discussed above, Plaintiff not only could have discovered, but did discover, her supposed fraud cause of action in 1991.  Accordingly, her claim was long ago time-barred. Nor is her claim saved by allegations of fraudulent concealment.  Just as in the RICO context, once the plaintiff is aware of a claim of fraud, the "fraudulent misrepresentation or concealment intended to induce forbearance from suit ceases to be operational."  *Commerce & Indus. Ins. Co. v. Imrex Co.*, 270 A.D.2d 147, 147 (N.Y. App. Div. 1st Dep't 2000).[13]

---

[13]    If the Court dismisses the federal RICO claims with prejudice, it may exercise its discretion either to decide the state law claim or dismiss it for lack of supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c).  Contrary to Plaintiff's allegations, no diversity jurisdiction exists because Plaintiff alleges that she is a citizen of New York (AC ¶ 16) and that Defendant Gruntal has its principal place of business in New York (AC ¶ 23).  *See* 28 U.S.C. § 1332.  Nor does this Court have jurisdiction under 28 U.S.C. § 1337, as Plaintiff contends, because no antitrust claims have been asserted in this action.

## III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE.

Plaintiff's claims should be dismissed with prejudice. *See Pohlot*, 664 F. Supp. at 118

(RICO claim dismissed with prejudice where plaintiff "failed to allege or substantiate injury to [ ]

business and property," or a continuing enterprise); *Iwachiw*, 194 F. Supp. 2d at 206 (denying

leave to file a second amended complaint where claim was time-barred).

## CONCLUSION

For the reasons stated above, the Court should dismiss the Amended Complaint with

prejudice, and grant such other and further relief as the Court determines is appropriate.

Dated: May 7, 2010

WILLKIE FARR & GALLAGHER LLP

By:

Martin Klotz
mklotz@willkie.com
John R. Oller
joller@willkie.com
Tariq Mundiya
tmundiya@willkie.com

787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000

*Attorneys for Defendants Steven Cohen, Donald Cohen, S.A.C. Capital Management, Inc. and Donald T. Cohen C.P.A., P.A.*