UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

....................................................................... X
                                             :

PATRICIA COHEN,                         :

                      *Plaintiff*,     :      Hon. William H. Pauley III

                                    :      No. 09 CV 10230 (WHP)

          -against-            :

                                    :      **ECF Case**

STEVEN COHEN, DONALD COHEN, and     :
BRETT LURIE,                     :      <u>**ORAL ARGUMENT REQUESTED**</u>

                                    :

                    *Defendants*.     :

                                    :
....................................................................... X

 

## BRIEF IN SUPPORT OF DEFENDANTS'
## <u>RENEWED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

 

                                    WILLKIE FARR & GALLAGHER LLP
                                    Martin Klotz
                                    Tariq Mundiya
                                    Jeffrey B. Korn
                                    787 Seventh Avenue
                                    New York, New York 10019
                                    (212) 728-8000

                                    *Attorneys for Defendants Steven Cohen and*
                                    *Donald Cohen*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

INTRODUCTION ...................................................................................................... 1

BACKGROUND FACTS .............................................................................................. 4

    A.    The Cohen Marriage, Lurie Investment and 1988 Divorce Proceedings ................. 4

    B.    Plaintiff's 1991 Attempt to Set Aside the 1989 Separation Agreement
        On the Basis of Fraud and Duress ................................................................... 6

    C.    The Four Alleged "Schemes" in the Second Amended Complaint ......................... 8

    D.    Plaintiff's Legal Claims .................................................................................. 9

ARGUMENT ........................................................................................................... 10

I.    THE AMENDED COMPLAINT DOES NOT STATE A RICO CLAIM ....................... 10

    A.    Plaintiff Has Not Alleged Any RICO Injury To Her Business Or Property ........... 11

    B.    Plaintiff Has Not Pleaded A "Pattern" Of Racketeering Activity. ...................... 12

    C.    The Amended Complaint Does Not Adequately Allege A RICO
        "Enterprise." ................................................................................................ 16

    D.    The Amended Complaint Does Not State A Claim Under Section 1962(d). .......... 18

II.    PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED BECAUSE SHE
     COULD NOT HAVE REASONABLY RELIED ON STEVEN'S ALLEGED
     STATEMENTS ABOUT THE VALUE OF THE LURIE INVESTMENT. ..................... 19

III.    THE BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED. ............. 21

IV.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
      PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE. ................................ 22

CONCLUSION ........................................................................................................ 23

## TABLE OF AUTHORITIES

Cases                                                                                                      Page(s)

*ABF Capital Management v. Askin Capital Management, L.P.*,
    957 F. Supp. 1308 (S.D.N.Y. 1997)......................................................................14

*Abernathy v. Erickson*,
    657 F. Supp. 504 (N.D. Ill. 1987) ......................................................................13

*Allen v. New World Coffee, Inc.*,
    No. 00-CV-2610, 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002)..........................18

*Block v. Razorfish Inc.*,
    121 F. Supp. 2d 401 (S.D.N.Y. 2000)................................................................22

*Campo v. Sears Holdings Corp.*,
    635 F. Supp. 2d 323 (S.D.N.Y. 2009)..................................................................4

*Capasso v. CIGNA Insurance Co.*,
    765 F. Supp. 839 (S.D.N.Y. 1991)..............................................................11, 21

*Caprer v. Nussbaum*,
    36 A.D.3d 176 (N.Y. App. Div. 2006) ..............................................................22

*Carnegie Mellon University v. Cohill*,
    484 U.S. 343 (1988)..........................................................................................18

*Cohen v. Cohen*,
    1 A.D.2d 586 (N.Y. App. Div. 1956) ................................................................21

*Columbraria Ltd. v. Pimienta*,
    110 F. Supp. 2d 542 (S.D. Tex. 2000) ..........................................................14, 15

*Danann Realty Corp. v. Harris*,
    5 N.Y.2d 317 (N.Y. 1959) ............................................................................19, 20

*Dempsey v. Sanders*,
    132 F. Supp. 2d 222 (S.D.N.Y. 2001)................................................................13

*Dibbs v. Gonsalves*,
    921 F. Supp. 44 (D.P.R. 1996)..........................................................................13

*DG Liquidation, Inc. v. Anchin, Block & Anchin LLP*,
    300 A.D.2d 70 (N.Y. App. Div. 2002) ..............................................................22

*D.R.S. Trading Co. v. Fisher*,
    No. 01-CV-8028, 2002 WL 1482764 (S.D.N.Y. July 10, 2002) ........................................13

*Efron v. Embassy Suites (Puerto Rico), Inc.*,
    223 F.3d 12 (1st Cir. 2000) ...........................................................................................10

*Etzion v. Etzion*,
    62 A.D.3d 646 (N.Y. App. Div. 2009) ...........................................................................21

*Faith Assembly v. Titledge of N.Y. Abstract, LLC*,
    106 A.D.3d 47 (N.Y. App. Div. 2013) ...........................................................................22

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ...........................................................................................18

*Fujisawa Pharm. Co., Ltd. v. Kapoor*,
    115 F.3d 1332 (7th Cir.1997) .........................................................................................14

*GICC Capital Corp. v. Technology Finance Group, Inc.*,
    67 F.3d 463 (2d Cir. 1995) .............................................................................................13

*Gilmore v. Gilmore*,
    No. 09-CV-6230, 2011 WL 3874880 (S.D.N.Y. Sept. 1, 2011) ................................15, 18

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000) ...........................................................................2, 10

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) ...........................................................................10

*Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*,
    748 F.2d 729 (2d Cir.1984) ...........................................................................................20

*Harris v. N.Y. State Department of Health*,
    202 F. Supp. 2d 143 (S.D.N.Y. 2002) ...........................................................................4

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996) .............................................................................................20

*Hibbard v. Benjamin*,
    No. 90-CV-10361, 1992 WL 300838 (D. Mass. Sept. 21, 1992) ..................................12, 13

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989) ........................................................................................................12, 16

*HSH Nordbank AG v. UBS AG*,
    95 A.D.3d 185 (N.Y. App. Div. 2012) ......................................................................20, 21

*International Telecom Inc. v. Generadora Electrica del Oriente S.A.*,
    No. 00-CV-8695, 2002 WL 465291 (S.D.N.Y. Mar. 27, 2002) ..........................................10

*Klein & Co. Futures, Inc. v. Board of Trade of N.Y.*,
    464 F.3d 255 (2d Cir. 2006) ...............................................................................................18

*Krear v. Malek*,
    961 F. Supp. 1065 (E.D. Mich. 1997) ................................................................................14

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) ...............................................................................................10

*Lundy v. Catholic Health System of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013) ...............................................................................................10

*MLSMK Investment Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011) ...............................................................................................15

*Martinez v. Martinez*,
    207 F. Supp. 2d 1303 (D.N.M. 2002) *aff'd in relevant part*,
    62 F. App'x 309 (10th Cir. 2003) ......................................................................................12

*Metz v. United Counties Bancorp*,
    61 F. Supp. 2d 364 (D.N.J. 1999) ......................................................................................14

*Murray v. Mulgrew*,
    No. 08-CV-01541, 2010 U.S. Dist. LEXIS 29159 (D.D.C. Mar. 26, 2010) .......................16

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001) ................................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Archway Ins. Servs. LLC*,
    No. 11-CV-1134, 2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012) ..............................2, 10, 13

*Pohlot v. Pohlot*,
    664 F. Supp. 112 (S.D.N.Y. 1987) ...............................................................................11, 22

*Popp Telecom, Inc. v. American Sharecom, Inc.*,
    361 F.3d 482 (8th Cir. 2004) ..............................................................................................14

*Ray Larsen Associates, Inc. v. Nikko America, Inc.*,
    No. 89-CV-2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ............................................15

*Rosenson v. Mordowitz,*
 No. 11-CV-6145, 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012)............................10, 17, 18

*Rosner v. Rosner,*
 766 F. Supp. 2d 422 (E.D.N.Y. 2011) ..................................................................................12

*Rowe v. Marietta Corp.,*
 955 F. Supp. 836 (W.D. Tenn. 1997)....................................................................................15

*Ruttenberg v. Ruttenberg,*
 No. 08-CV-4898, 2009 WL 424548 (N.D. Ill. Feb. 18, 2009) ............................................12

*Schlaifer Nance & Co. v. Warhol,*
 119 F.3d 91 (2d Cir. 1997)....................................................................................................16

*Sedima, S.P.R.L. v. Imrex Co.,*
 473 U.S. 479 (1985)....................................................................................................10, 15, 16

*Sekisu America Corp. v. Hart,*
 No. 12-CV-3479, 2012 WL 5039682 (S.D.N.Y. Oct. 17, 2012)..........................................20

*Shamis v. Ambassador Factors Corp.,*
 No. 95-CV-9818, 1997 WL 473577 (S.D.N.Y. Aug. 18, 1997)...........................................15

*Sheridan v. Mariuz,*
 No. 07-CV-3313, 2009 WL 920431 (S.D.N.Y. Apr. 6, 2009) ......................................11, 12

*Spool v. World Child International Adoption Agency,*
 520 F.3d 178 (2d Cir. 2008)....................................................................................................4

*Streck v. Peters,*
 855 F. Supp. 1156 (D. Haw. 1994) .......................................................................................13

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,*
 612 F. Supp. 2d 267 (S.D.N.Y. 2009)....................................................................................15

*Unicredito Italiano SpA v. JPMorgan Chase Bank,*
 288 F. Supp. 2d 485 (S.D.N.Y. 2003)....................................................................................20

*United States v. Aulicino,*
 44 F.3d 1102 (2d Cir. 1995)...................................................................................................13

*United States v. Daidone,*
 471 F.3d 371 (2d Cir. 2006)............................................................................................17, 18

*United States v. Minicone,*
 960 F.2d 1099 (2d Cir. 1992) ................................................................................................17

*Westgate Financial Corp. v. Beinoni of N.Y. Inc.*,
   No. 10-CV-8102, 2012 WL 219334 (S.D.N.Y. Jan. 25, 2012) ..........................................15

*Wynn v. AC Rochester*,
   273 F.3d 153 (2d Cir. 2001)...............................................................................................19

Statutes, Rules, and Regulations                                                                Page(s)

18 U.S.C. § 1341 ....................................................................................................................8

18 U.S.C. § 1962(c) .........................................................................................................16, 17

18 U.S.C. § 1964(c) .........................................................................................................11, 14

28 U.S.C. § 1331 ..................................................................................................................18

28 U.S.C. § 1367(c) ..............................................................................................................18

Fed. R. Civ. P. 10(c) ...............................................................................................................4

## PRELIMINARY STATEMENT

Defendants Steven Cohen and Donald Cohen ("Defendants"), by their counsel, respectfully submit this brief in support of their renewed motion to dismiss the Second Amended Complaint ("Amended Complaint" or "2AC") brought by Plaintiff Patricia Cohen ("Plaintiff" or "Patricia") in the above-captioned action, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.  A copy of the Second Amended Complaint is attached as Exhibit A to the Declaration of Martin Klotz ("Klotz Decl."), executed on July 12, 2013, submitted herewith.

## INTRODUCTION

The Amended Complaint is Plaintiff Patricia Cohen's third attempt to state a claim against her former husband, Steven Cohen, in an effort to reopen state court divorce proceedings that were concluded more than 20 years ago.  The first attempt was withdrawn by her original counsel in what Patricia now admits was a "hasty retreat" to avoid sanctions, and the second was, again according to Patricia herself, a "sprawling and confusing" pleading by her second counsel that Patricia became "concerned" about after reading Defendants' motion to dismiss that complaint.[1] Now represented by yet a new set of lawyers, her fourth, Patricia continues her relentless, but legally defective, campaign of harassment and extortion against Steven Cohen.

In this action, Patricia Cohen asserts that Mr. Cohen and his brother violated the federal civil RICO statute and state common law by allegedly failing to disclose, in Mr. Cohen's 1989 divorce proceedings, a $5.5 million settlement payment allegedly made in connection with a real estate venture in the mid-1980s (the "Lurie Investment").  The entire action was initially dismissed with prejudice by Judge Holwell on the grounds that Patricia had not adequately alleged that Steven misrepresented his finances in the divorce and that, in any event, her claims were all time-

---

[1] *See* Plaintiff's Memorandum in Support of Her Motion For Leave to File a Second Amended Complaint ¶ 2 (Dkt. No. 49).  Plaintiff's third set of lawyers also has withdrawn.

barred.  Although the Second Circuit disagreed with the reasons Judge Holwell cited to support his ruling, it expressly left to this Court to decide whether this case should be dismissed for any of the other reasons argued by Defendants, reasons that Judge Holwell never reached.  Those arguments go to the very heart of Plaintiff's case.  As demonstrated below, Plaintiff's claims—which purport to make a federal RICO case out of what is really a straightforward claim that she received too little in settlement of a state court divorce proceeding—are fundamentally and fatally flawed.

*First*, Plaintiff should not be permitted to transform a garden-variety (and factually meritless) fraud claim—arising from divorce proceedings that concluded more than twenty years ago—into a federal RICO action.  Federal courts across the country routinely dismiss similar attempts to federalize matrimonial disputes and this case should be no different.  As this Court recently stated, "'courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'"  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Archway Ins. Servs. LLC*, No. 11-CV-1134, 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012) (quoting *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y. 2000)).

To begin with, Patricia's claim to a more favorable division of marital assets is not a property interest protected under RICO.  It is undisputed that Steven and Patricia's separation agreement, which was highly negotiated by competent counsel, was not an agreement to split marital assets fifty-fifty.  Even if Patricia's allegations were credited, at best she would have had an expectancy interest, itself the subject of negotiation, that the RICO statute is not designed to protect.

Putting aside this threshold standing issue, Patricia cannot allege the pattern element of a RICO claim based on the alleged hiding of assets in a divorce proceeding.  Where, as here, the Amended Complaint alleges a single fraudulent scheme against Patricia, allegedly affecting a

- 2 -

single victim, and occurring over a finite period of time (the pendency of the divorce action), the alleged RICO violation simply does not present any threat of continuing criminal conduct.  The allegations that Defendants engaged in *other* purported schemes not directed at Plaintiff (the so-called "Insider Trading Scheme," the "Co-Op Scheme," and the "Second Securities Fraud Scheme"), spurious as those contentions are, cannot salvage the Amended Complaint because it is well settled that *unrelated* predicate acts that do not cause injury to the *plaintiff* may not be considered part of the requisite "pattern."

Patricia also cannot satisfy the RICO "enterprise" requirement.  To do so, Plaintiff must plead a nexus between the alleged RICO predicate acts and the enterprise—in the words of the RICO statute, that defendants conducted the alleged pattern of racketeering activity "through" the enterprise.  Here, the only relevant predicate acts—Steven's alleged oral statements in connection with a negotiated settlement agreement that a certain investment was "worthless"—were not accomplished "through" the only alleged enterprises identified in the Amended Complaint (his former employer, Gruntal & Co., and an entity, SAC Trading Corporation, that he owned).  They were entirely personal statements, bearing no nexus to any enterprise.

*Second*, Patricia's common law fraud claim should be dismissed because she was not defrauded.  The only fraud alleged in this case is that Steven allegedly misrepresented the value of the Lurie Investment.  But Steven and Patricia's Separation Agreement—the very agreement that Patricia claims she was induced by fraud to enter into—itself states unequivocally that "Husband makes no representation as to the value" of the Lurie Investment.  The Separation Agreement further states that "complete financial disclosure . . . has not been obtained," discovery is waived, and that the parties were relying solely on representations made in the contract itself.  Because the Separation Agreement "*makes no representation* as to the value" of the Lurie Investment—the sole alleged misrepresentation in this case—Patricia could not have reasonably relied on Steven's

- 3 -

alleged oral statements about the value of the Lurie Investment when she entered into the

Separation Agreement.  Moreover, this fraud claim simply restates Patricia's allegations in 1991

that Steven concealed his financial circumstances during their settlement negotiations, which she

ultimately abandoned.

*Third*, Patricia's fiduciary duty claims are equally meritless.  Steven Cohen, as the spouse

in an adversarial divorce proceeding, and Donald Cohen, as Plaintiff's former accountant, did not

owe Plaintiff a fiduciary duty under New York law.

Accordingly, the Amended Complaint should be dismissed, and with prejudice.

## BACKGROUND FACTS

The Amended Complaint is filled with patently false assertions and irrelevant allegations

clearly intended for the media.  This is neither the time nor the place for a point-by-point

refutation of Plaintiff's false statements.  The Court, of course, need not credit "bald assertions and

conclusions of law," and allegations contradicted by Plaintiff's own prior pleadings in this or the

divorce action can and should be disregarded in their entirety.  *See Spool v. World Child Int'l*

*Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  The Court may, however, consider

documents incorporated by reference in the Amended Complaint, *see* Fed. R. Civ. P. 10(c);

*Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 328 (S.D.N.Y. 2009), and documents that

are "integral" to Plaintiff's claims, even if not explicitly incorporated by reference, *Harris v. N.Y.*

*State Dep't of Health*, 202 F. Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002).

### A.  The Cohen Marriage, Lurie Investment and 1988 Divorce Proceedings

Patricia and Steven Cohen were married in 1979.  (2AC ¶ 13.)  By 1985 Steven Cohen had

become a successful trader at Gruntal & Co. ("Gruntal"), a securities firm in New York.  (2AC

¶¶ 12, 14.)  In 1986, Steven Cohen created SAC Trading Corporation ("SAC"), of which he was

President and 100% owner, his brother Donald Cohen, an accountant, its Treasurer, and defendant

Brett Lurie, a lawyer, its Secretary.  (2AC ¶ 16.)[2]  By this time the marriage had deteriorated and the couple had discussed the possibility of a divorce.  (2AC ¶ 15.)

In early 1986, Steven told Patricia he wanted to invest "millions of dollars" from SAC with Lurie to purchase real estate in New York City for conversion to co-op apartments.  (2AC ¶ 17.) During the next several months he told her the investment was "going sour," and he and Donald Cohen told her that the entire, nearly $9 million, value of the investment had been lost, although it could not be written off until the properties went into foreclosure or bankruptcy.  (2AC ¶¶ 19-20.) According to the Amended Complaint, Lurie repaid $5.5 million to Steven at some unspecified time before January 1987, about which Steven, anticipating a divorce, never told Patricia.  (2AC ¶ 21.)

In 1988, Steven and Patricia separated.  A first set of divorce proceedings (the "1988 Divorce Proceedings") resulted in a Stipulation of Settlement and Separation Agreement dated December 15, 1989 (the "1989 Separation Agreement"), that was filed with the divorce court and ultimately incorporated into a Judgment of Divorce dated March 13, 1990.  (2AC ¶ 22; Klotz Decl. Exs. B, C.)

During the 1988 Divorce Proceedings, Plaintiff was provided with a Statement of Financial Condition dated July 1, 1988 (the "1988 Financial Statement") that listed the net worth of Mr. and Mrs. Cohen as approximately $17 million, with the Lurie Investment valued at $8,745,169.  (2AC ¶ 22; Klotz Decl. Ex. D.)  Patricia and her lawyer allegedly relied, in agreeing to a settlement, on Steven's and Donald's oral representations about the Lurie Investment—specifically, that it was valueless—because Donald Cohen "had been" her accountant and she thought he was "still looking out for her interests."  (2AC ¶ 26.)

---

[2]      Brett Lurie is also a named defendant in this action, but has never been served or entered an appearance despite the passage of more than three years since this action was filed.

However, the 1989 Separation Agreement, incorporated by reference in paragraph 22 of

the Amended Complaint, provided that:

- Each party acknowledges that "complete financial disclosure . . . has **not** been obtained." (1989 Separation Agreement ¶ 14.5 (Klotz Decl. Ex. B) (emphasis added).)

- Each party "has acknowledged a degree of familiarity with and knowledge of the financial circumstances of the other and each party is of the opinion that he and she are sufficiently informed of income, assets, property and financial prospects of the other. Husband has provided wife with his net worth statement and the statement of financial condition dated as of July 1, 1988, **provided, however, that Husband makes no representation as to the value of the interest in a second and third mortgage on various properties involved in cooperative conversions in Queens, New York in which the investment was listed on his statement of financial condition dated as of July 1, 1988 at a value of $8,745,169."** (*Id.* ¶ 14.4 (emphasis added).)

- Each party acknowledges that the Separation Agreement "has been achieved after what they consider to be sufficient disclosure, consultation with legal representatives and bona fide negotiations" and that the Separation Agreement "is fair and reasonable." (*Id.* ¶ 14.7.)

- Each party "acknowledges that respective counsel have advised that under the Equitable Distribution Law of the State they are each entitled to a full disclosure and valuation of all property owned by the other party . . . but both parties have advised their counsel that they are aware of these facts and desire to curtail discovery, are unwilling to litigate the issues and desire to proceed with this Agreement on the limited financial data supplied to date and their own knowledge of the other party's financial affairs." (*Id.* ¶ 14.5.)

- Each party acknowledges that "[n]o representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement" and "[t]his Agreement is not being executed in reliance upon any representation or warranty not expressly set forth herein." (*Id.* ¶ 19.5.)

- Each party "mutually releases and discharges the other of and from any claim or cause of action against the other" except for obligations "provided for or arising out of" the Separation Agreement and actions for divorce. (*Id.* ¶ 14.10.)

**B.    Plaintiff's 1991 Attempt to Set Aside the 1989 Separation Agreement On the Basis of Fraud and Duress.**

On March 21, 1991, barely a year after the divorce judgment, Plaintiff sought to set aside

the 1989 Separation Agreement on the grounds of "fraud and economic duress" (the "1991 Fraud

Proceedings"). (Klotz Decl. Ex. E ¶ 3.) To support that motion, Plaintiff and her lawyer filed

sworn affidavits in the New York Supreme Court asserting that Steven had concealed his financial

condition in the 1988 Divorce Proceedings. Plaintiff's March 20, 1991 affidavit asserted that

Steven had filed his 1989 taxes under married filing separately, despite paying a higher tax, in

order to avoid disclosing substantially increased income, and that such failure to disclose should

be sufficient to set aside the maintenance and support provisions of the 1989 Separation

Agreement. (Klotz Decl. Ex. F ¶ 4.) Patricia's then counsel, Martin Kera, also filed an

affirmation dated May 8, 1991, on Plaintiff's behalf, echoing Patricia's allegations and stating his

belief that Steven had concealed his financial circumstances by funneling his income to SAC or to

Donald, or deferring his compensation so that his 1989 income tax return did not show his true

income. (Klotz Decl. Ex. G ¶ 4.)

       In response, Steven submitted an affidavit, which stated, among other things, that "The

Brett-Lurie deal is presently involved in bankruptcy proceedings. . . . I am writing it off as totally

worthless." (2AC ¶ 31.) Patricia alleges that this statement was also false. (*Id.* ¶ 32.)

       Ultimately, on August 6, 1991, the divorce court (Schackman, J.) ruled as follows: "That

part of [Mrs. Cohen's] motion to set aside the separation agreement on the grounds that it was

procured by fraud and economic duress is permitted to be withdrawn without prejudice to institute

a separate plenary action on this basis if [Mrs. Cohen] is so advised." (Klotz Decl. Ex. H, at 1.)

Patricia chose not to commence such an action. Rather, on January 6, 1992, the parties executed

an amended Separation Agreement, (the "Amended Agreement") providing for increased child

support payments, reaffirming the fairness of the couple's prior division of marital property and

Patricia Cohen's waiver of separate maintenance, and incorporating by reference the full release

and the disclaimer of reliance on any unwritten representations from the 1989 Separation

Agreement. (Klotz Decl. Ex. I.)

**C.     The Four Alleged "Schemes" in the Second Amended Complaint**

The Amended Complaint alleges four different "schemes," each allegedly a predicate

offense under RICO, but only one of which is alleged to have victimized Plaintiff.  The **first**, the

so-called **"Scheme Against Patricia,"** is based on the alleged misstatement by Steven and Donald

that the Lurie Investment was worthless when, according to Patricia, Lurie had allegedly repaid

Mr. Cohen the sum of $5.5 million in or before January 1987.  This alleged scheme was allegedly

carried out through mail fraud, in violation of 18 U.S.C. § 1341, in that the 1988 Financial

Statement, 1989 Separation Agreement, and Steven's 1991 Affidavit were each mailed to Patricia

or her lawyer through the U.S. Mail.  (2AC ¶¶ 23, 29, 33, p. 12 ¶ 70, p. 13 ¶¶ 72-76.)

The **second** alleged scheme, the "**Insider Trading Scheme**," consisted of Steven's and

Donald's alleged $10 million profit from non-public information concerning General Electric

Co.'s acquisition of RCA in 1985, in violation of Section 10(b) of the Securities Exchange Act of

1934 and Rule 10b-5 thereunder.  (2AC ¶¶ 46-52, p. 13 ¶¶ 77, 79.)  Plaintiff alleges that, in

furtherance of the Insider Trading Scheme, Steven invested the illegally obtained $10 million with

Lurie in 1986 so as to avoid reporting it to the I.R.S. as income, in violation of the anti-money

laundering statute.  (*See* 2AC ¶¶ 53-54, p. 13 ¶ 78.)  Although omitted from the Amended

Complaint, Patricia Cohen's prior complaints admitted that she knew of the alleged insider trading

profits and that concerns about investigations of Steven for alleged illegal trading activities caused

her to resolve to terminate the marriage.  (FAC (Klotz Decl. Ex. J) ¶¶ 38, 60; Original Complaint

("OC") (Klotz Decl. Ex. K) ¶¶ 23-24 (Dkt. No. 1).)  In other words, she cannot claim to have

recently discovered this so-called scheme.

The **third** alleged scheme, the "**Co-Op Scheme**," involved Lurie's alleged defrauding of

co-op buyers to obtain profits from co-op conversions, perpetrated through SAC and using the

U.S. Mail.  (2AC ¶¶ 55-63, pp. 12-13 ¶¶ 71-73.)  Patricia "believes" Steven "agreed with the

scheme" (2AC ¶ 57), even though Steven and Lurie later became litigation adversaries and Steven, even by Patricia's account, derived no profit from it.

The **fourth** alleged scheme, the "**Second Securities Fraud Scheme**," consists of Steven's alleged manipulation of the price of an "undisclosed common stock" while head of a proprietary trading group at Gruntal in 1991, in violation of the federal securities laws.  (2AC ¶¶ 64-67, p. 13 ¶ 77.)

### D.    Plaintiff's Legal Claims

Plaintiff asserts the four alleged schemes as alleged predicate offenses as part of a "conspiracy to violate RICO" entered into by Steven, Donald and Lurie.  (2AC pp. 12-15 ¶¶ 68-89.)  The Amended Complaint makes clear, however, that it asserts claims against each Defendant, and seeks relief under RICO, *only* for allegedly "carrying out the *Scheme Against Patricia*," and not the other three schemes that are not alleged to have harmed her.  (2AC p. 15 ¶ 89 (emphasis added).)

In addition to RICO, Plaintiff asserts common law claims for fraud and conspiracy to commit fraud against Steven, Donald and Lurie (2AC pp. 15-16 ¶¶ 68-73), for breach of fiduciary duty against Steven, Donald, and Lurie (2AC pp. 16-17 ¶¶ 68-73), and, against Steven only, for "unjust enrichment" (2AC p. 17 ¶¶ 68-71).[3]

As damages, Plaintiff seeks at least $2.75 million (half of the $5.5 million allegedly concealed from her), trebled on the RICO claim.

---

[3]    The Second Circuit affirmed the prior District Court's holding that the unjust enrichment claim was time-barred.  *Cohen v. Cohen*, 11-1390-cv (2d Cir. April 3, 2013) ("App. Op.") at 16.

<u>ARGUMENT</u>

## I.    THE AMENDED COMPLAINT DOES NOT STATE A RICO CLAIM

To state a claim under the civil RICO statute, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *accord Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). A plaintiff also must allege that the violation resulted in "an injury to the plaintiff's business or property." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (citations omitted). Because of the frequent abuse of the RICO statute, "courts have an obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012); *see also Nat'l Union Fire Ins. Co. of Pittsburg, P.A. v. Archway Ins. Servs. LLC*, No. 11-CV-1134, 2012 WL 1142285, at *3 (S.D.N.Y. Mar. 23, 2012); *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (citing *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)); *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 537 (S.D.N.Y. 2001); *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000). "Indeed, the 'overwhelming trend' amongst the lower courts is to apply Rule 9(b) strictly in order to effect dismissal of civil RICO suits." *Int'l Telecom Inc. v. Generadora Electrica del Oriente S.A.*, No. 00-CV-8695, 2002 WL 465291, at *7 (S.D.N.Y. Mar. 27, 2002) (citations omitted).

As discussed below, Patricia's attempt to convert a garden-variety divorce proceeding into a federal RICO action should be dismissed for several reasons—as many courts addressing similar attempts have done before.

### A.     Plaintiff Has Not Alleged Any RICO Injury To Her Business Or Property.

The RICO statute limits private actions to those by "[a]ny person injured in his *business or property* by reason of a violation of [the RICO Act's substantive provisions]."  18 U.S.C. § 1964(c) (emphasis added).  Here, Plaintiff does not allege any injury to a "business," and thus her RICO claim must be predicated on alleged injury to her "property."  According to Plaintiff, she claims a "property" interest equal to half of the $5.5 million allegedly repaid by Lurie to Steven in 1987.  (2AC p. 16 ¶ 71.)  Nowhere does Plaintiff identify the basis or source of her "property" interest in the $5.5 million.  Plaintiff does not allege the existence of any agreement with Steven to divide their marital property, much less the Lurie investment, equally.  In fact, the 1989 Separation Agreement itself is directly contrary to such a division.  (Klotz Decl. Ex. B, ¶ 3.8 ("assets in Husband's name solely . . . shall be considered to be separate property of Husband").)  Put differently, Plaintiff seeks to rewrite the Separation Agreement to increase her cash payment by $2.75 million by claiming a non-existent property interest in that supposed money.

Plaintiff's RICO claim is thus premised on exactly the type of expectancy interest—*i.e.*, an alleged entitlement to a greater share of assets in the divorce—that is insufficient to confer RICO standing.  *See Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 842 (S.D.N.Y. 1991) (wife's "mere expectation that she might be awarded some share in her husband's property is too speculative to support a RICO claim"); *Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987) ("Plaintiff's mere expectation of a favorable decree awarding her a share of [her husband's] assets in the state court matrimonial action does not constitute a property interest protected under RICO.").  As the court stated in *Sheridan v. Mariuz*, No. 07-CV-3313, 2009 WL 920431, at *8 (S.D.N.Y. Apr. 6, 2009):

> [T]he claim in the instant case is predicated upon an assumption that a larger marital settlement award could have been awarded to the Plaintiff had the Defendants not committed the alleged RICO activity.  Similar to the dismissal of

the RICO claim in *Pohlot* due to the absence of a cognizable property interest protected by the RICO statute, the RICO claim in this case should also be dismissed due to the similar absence of a protected property interest under the terms of the RICO statute.

*Id.* (citation omitted).

Thus, Plaintiff has not even established the basic threshold for a RICO claim—standing to sue based on an injury to her business or property—and the RICO claim should be dismissed for this reason alone.

### B.      Plaintiff Has Not Pleaded A "Pattern" Of Racketeering Activity.

Plaintiff's RICO claims also fail because she has not adequately alleged the "pattern" element.  As the Supreme Court has cautioned, a "pattern of racketeering activity" means at least two predicate acts that "are related, *and* that . . . amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original).

Courts across the country routinely hold that allegations that a spouse was concealing marital assets in a divorce do not satisfy the "pattern" element.  *See, e.g.*, *Rosner v. Rosner*, 766 F. Supp. 2d 422, 425-6 (E.D.N.Y. 2011) ("[R]egardless of the number and span of the alleged predicate acts, the plaintiff alleges a single goal of all of this activity: to hide marital property from her.  In the Court's view, this does not rise to the level of alleged wrongdoing required to state a valid RICO claim."); *Ruttenberg v. Ruttenberg*, No. 08-CV-4898, 2009 WL 424548, at *4 (N.D. Ill. Feb. 18, 2009) ("[T]he sort of fraud involved in hiding assets in connection with a divorce does not constitute a pattern of racketeering for purposes of RICO.") (collecting cases); *Martinez v. Martinez*, 207 F. Supp. 2d 1303, 1306-07 (D.N.M. 2002) (alleged conspiracy by former husband to hide marital assets "simply [does] not present any threat of continuing racketeering activity"), *aff'd in relevant part,* 62 F. App'x 309, 313 (10th Cir. 2003); *Hibbard v. Benjamin*, No. 90-CV-10361, 1992 WL 300838, at *3 (D. Mass. Sept. 21, 1992) (scheme to routinely extort fees from

divorcing husbands revolved around a single criminal scheme and did not establish facts showing a "pattern of racketeering activity").[4]

These holdings are consistent with the proposition that alleged RICO schemes involving a single victim and a natural termination point—such as a divorce action—establish neither the "open-ended" nor "closed-ended" continuity necessary to allege a "pattern." *See, e.g.*, *United States v. Aulicino*, 44 F.3d 1102, 1113 (2d Cir. 1995) (no pattern alleged where "a defendant had a piece of property the sale of which, even if by fraudulent means, provided a natural end to his project"); *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 468 (2d Cir. 1995) (finding that single-victim acts by a handful of participants was not a "multi-faceted scheme" sufficient to meet continuity requirement); *Nat'l Union Fire*, 2012 WL 1142285, at *4 (finding plaintiffs' allegations "fall short of the benchmark for closed-ended continuity" where fraudulent insurance certificates were allegedly issued by one person for the sole purpose of defrauding an insurance company); *D.R.S. Trading Co. v. Fisher*, No. 01-CV-8028, 2002 WL 1482764, at *4 (S.D.N.Y. July 10, 2002) ("When the fraudulent conduct alleged involves such a limited number of perpetrators, small number of victims, and limited goal, it cannot support a claim of open-ended or closed-ended continuity."); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) ("[W]here a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established").

---

[4]     *See also Streck v. Peters*, 855 F. Supp. 1156, 1166 (D. Haw. 1994) (predicate acts aimed at disrupting divorce proceedings and forcing spouse to divulge alleged "secret funds and incomes" did not constitute pattern of racketeering); *Dibbs v. Gonsalves*, 921 F. Supp. 44, 50-51 (D.P.R. 1996) (assertions that ex-spouse hid marital assets through mail fraud, wire fraud, and money laundering are insufficient to state RICO "pattern"); *Abernathy v. Erickson*, 657 F. Supp. 504, 509 (N.D. Ill. 1987) (scheme to defraud former spouse out of property did not constitute pattern of racketeering).

Here, the only relevant alleged scheme that harmed Plaintiff, the so-called "Scheme Against Patricia," involved a single alleged victim and was limited to a single divorce action with a natural end point. That single scheme does not satisfy the pattern element.

In a transparent attempt to circumvent the factual defects in her "pattern" allegations, Plaintiff alleges three additional schemes—the Insider Trading Scheme, the Co-Op Scheme, and the Second Securities Fraud Scheme—as RICO predicate acts. (*See* 2AC pp. 12-13 ¶¶ 68-79.) Those disconnected so-called "Schemes" cannot rescue Patricia's defective pattern allegations.

As an initial matter, the alleged securities fraud violations underlying the Insider Trading Scheme and the Second Securities Fraud Scheme cannot extend the scope of the alleged pattern because federal securities law violations are not RICO predicate acts as a matter of law. The Private Securities Litigation Reform Act amended the RICO statute to provide that "no person may rely upon any *conduct that would have been actionable as fraud in the purchase or sale of securities* to establish a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). That amendment applies to all RICO actions filed after the effective date of the PSLRA, December 22, 1995, even if the alleged securities fraud violations were earlier in time. *See e.g., ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308 (S.D.N.Y.1997) (finding PSLRA Amendment removing securities fraud claims from list of RICO predicate acts applies to cases filed after its enactment even when underlying conduct predates the change); *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 489 (8th Cir. 2004) ("We therefore hold that the PSLRA applies to all securities-based RICO claims commenced after its effective date even if such claims are based on conduct which predates the PSLRA").[5] The Amended Complaint's alleged securities

---

[5]     *See also Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1337-38 (7th Cir.1997); *Krear v. Malek*, 961 F. Supp. 1065, 1073 (E.D. Mich. 1997); *Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 370 (D.N.J. 1999); *Columbraria Ltd. v. Pimienta*, 110 F.

fraud violations are therefore irrelevant to Patricia's RICO claims.  *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274-78 (2d Cir. 2011) (holding that the RICO Amendment bars all RICO claims that would have been actionable as fraud in the purchase or sale of securities); *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281 (S.D.N.Y. 2009) (same); *Gilmore v. Gilmore*, No. 09-CV-6230, 2011 WL 3874880, at *4 (S.D.N.Y. Sept. 1, 2011) (same).

More fundamentally, neither the two alleged securities fraud schemes, nor the alleged "Co-Op Scheme," advances Plaintiff's "pattern" claim because only *related* predicate acts that *allegedly injured plaintiff* can be considered as part of the "pattern."  *See Westgate Fin. Corp. v. Beinoni of N.Y. Inc.*, No. 10-CV-8102, 2012 WL 219334, at *3 (S.D.N.Y. Jan. 25, 2012) ("Unrelated predicate acts allegedly committed against victims *other than* [the plaintiff] may not be used to extend the scope of the pattern of racketeering activity"); *Shamis v. Ambassador Factors Corp.*, No. 95-CV-9818, 1997 WL 473577, at *15 (S.D.N.Y. Aug. 18, 1997) (dismissing RICO claim because allegations of similar frauds against other parties cannot satisfy closed-ended continuity requirement); *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89-CV-2809, 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996) (stating that acts that "are unrelated to the predicate acts which allegedly injured plaintiff . . . cannot be considered as part of the activity to extend the scope of the 'pattern.'").  Here, the Complaint affirmatively alleges that the Co-Op Scheme, Insider Trading Scheme and the Second Securities Fraud Scheme defrauded third parties, *not* Patricia.  (2AC ¶¶ 4, 52, 63, 66.)

This rule follows from the principle that only predicate acts that proximately harm the plaintiff can give rise to a RICO claim.  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496

Supp. 2d 542, 548 (S.D. Tex. 2000); *Rowe v. Marietta Corp.*, 955 F. Supp. 836, 848 (W.D. Tenn. 1997).

(1985) ("[P]laintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by the conduct constituting the [RICO] violation.*") (emphasis added); *Murray v. Mulgrew*, No. 08-CV-01541, 2010 U.S. Dist. LEXIS 29159, at *8 (D.D.C. Mar. 26, 2010) (plaintiff failed to allege causal relationship between her husband's actions in stealing money from NatWest bank and her injury in form of a reduced award in divorce action). It is also rooted in the principle that, to satisfy the pattern element, a plaintiff must show that "the racketeering predicates are related" to each other. *H.J. Inc.*, 492 U.S. at 239; *see also Schlaifer Nance & Co. v. Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (stating that a plaintiff "must plead at least two predicate acts [and must] show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity.").

Here, none of the additional three alleged schemes involves related racketeering activity, none is directed against Plaintiff, and none injured her. Indeed, Plaintiff herself recognizes this, limiting her RICO prayer for relief to the alleged violations "in carrying out the Scheme Against Patricia." (2AC p. 15 ¶ 89.) The other alleged schemes therefore are irrelevant, cannot extend the scope of the alleged "pattern," and no RICO claim can be based upon them.

## C.     The Amended Complaint Does Not Adequately Allege A RICO "Enterprise."

The Amended Complaint must also be dismissed because Plaintiff fails to allege the necessary connection between the fraud allegedly committed against her in the divorce proceeding, and the alleged RICO "enterprise."

Under § 1962(c) of the RICO statute:

It shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs *through a pattern of racketeering activity* . . .

18 U.S.C. § 1962(c) (emphasis added).  In the Second Circuit, to plead that a defendant has conducted the activities of an enterprise "through" a pattern of racketeering activity, a plaintiff must plead facts establishing "(1) that the defendant 'was *enabled* to commit the predicate offenses *solely* by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise,' or (2) that 'the predicate offenses are related *to the activities of that enterprise.*'"  *United States v. Daidone,* 471 F.3d 371, 375 (2d Cir. 2006) (emphasis added) (quoting *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992)).  That is, the use of an alleged enterprise must be "significant enough to transform that entity into a RICO enterprise for purposes of the RICO statute."  *Rosenson v. Mordowitz*, No. 11-CV-6145, 2012 WL 3631308, at *7 (S.D.N.Y. Aug. 23, 2012) ("There is nothing about the use of the particular resources alleged that is crucial to the pattern of racketeering activities, nor is there any special connection between the enterprise and the resources.").  Neither criteria is satisfied here.

The Amended Complaint alleges that SAC is the sole RICO enterprise involved in the alleged Scheme Against Patricia.  (2AC p. 15 ¶ 87.)[6]  Patricia, however, fails to plead any facts indicating that SAC was necessary to that so-called "Scheme."  Nothing in the Amended Complaint suggests that SAC was in any way involved in the alleged concealment of assets by Steven in the divorce action, that such alleged concealment was committed through or by using SAC, or that the alleged predicate acts of mail and wire fraud aimed at Plaintiff were related in any way to the activities of SAC.  Indeed, the supposedly concealed $5.5 million payment did not even go to SAC:  the Amended Complaint alleges that it went "to Steven."  (2AC ¶ 21.)  At most, the Amended Complaint  alleges that Steven *personally* did not truthfully disclose his assets in the affidavits he filed in divorce court and in oral statements he made *personally* to Plaintiff.  Neither

---

[6]     No nexus is alleged at all between Gruntal—the other alleged RICO enterprise—and the Scheme Against Patricia.

Steven's position in SAC nor his access to SAC's resources enabled him to commit this alleged fraud.  If Steven misstated his finances (which he did not), he did so in his personal capacity.  He did not need, or use, the alleged enterprise, SAC, to commit that alleged act.  Thus, the alleged enterprise was not needed to carry out the particular fraud about which Plaintiff complains.

SAC, accordingly, is *not* an "enterprise" for RICO purposes.  *See, e.g.*, *Rosenson*, 2012 WL 3631308, at *7 (company did not qualify as RICO enterprise because defendant "would not have been hindered in the commission of the alleged acts of wire and mail fraud without access to M&L's resources or facilities," "the fraudulent acts could have just as well been committed in any other office," and "[t]he fact that M&L's resources were used is merely incidental"); *see also Daidone*, 471 F.3d at 375 (predicate acts must be "related to the activities of [the] enterprise" or enterprise must "solely" enable commission of predicate acts).

### D.    The Amended Complaint Does Not State A Claim Under Section 1962(d).

Plaintiff has failed to allege an underlying section 1962(c) violation of the RICO statute.  Accordingly, no section 1962(d) claim can be sustained.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004); *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on.").[7]

---

[7]    Federal question jurisdiction is the sole basis for subject matter jurisdiction asserted by Patricia.  (*See* 2AC ¶ 10.)  Accordingly, if the Court dismisses Patricia's RICO claims, the entire action should be dismissed.  *See* 28 U.S.C. § 1367(c); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n7, (1988) (recognizing nonmandatory rule that where all federal claims are dismissed, district courts should dismiss all state claims as well); *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early states of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Gilmore*, 2011 WL 3874880, at *7 (S.D.N.Y. 2011) ("Because subject matter jurisdiction was based solely on 28 U.S.C. § 1331 and on the federal questions presented by Plaintiff's RICO claims, which are now dismissed, this Court may decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.").

II.   **PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED BECAUSE SHE COULD NOT HAVE REASONABLY RELIED ON STEVEN'S ALLEGED STATEMENTS ABOUT THE VALUE OF THE LURIE INVESTMENT.**

Patricia's fraud claim should be dismissed because she cannot plead an essential element—reasonable reliance.  *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).  According to Patricia, Steven's allegedly false representations concerning the value of the Lurie Investment "induced" her to "agree to the Settlement Agreement."  (2AC p.15 ¶ 70.)  But paragraph 28 of the Amended Complaint, while partially quoting from Article 14.4 of the 1989 Separation Agreement, omits, through use of ellipses, the following very important proviso:

> . . . provided, however, that **Husband makes no representation** as to the value of the interest in a second and third mortgage on various properties involved in cooperative conversions in Queens, New York in which the investment was listed on his statement of financial condition dated as of July 1, 1988 at a value of $8,745,169.

(1989 Separation Agreement ¶ 14.4 (Klotz Decl. Ex. B (emphasis added).)  Lest there be any doubt, the Separation Agreement also states that "complete financial disclosure . . . has not been obtained" and discovery is waived.  (*Id.* ¶ 14.5.)  Finally, the Separation Agreement states that "[n]o representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement" and "[t]his Agreement is not being executed in reliance upon any representation or warranty not expressly set forth herein."  (*Id.* ¶ 19.5.)

Steven thus expressly and unequivocally told Patricia—and Patricia agreed—that he was not making **any** representation about the "value" of the Lurie Investment.  In short, "plaintiff has in the plainest language announced and stipulated that [she] is not relying on any representations as to the very matter as to which [she] now claims [she] was defrauded."  *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (N.Y. 1959).

This disclaimer establishes as a matter of law that Patricia did not rely and could not have relied—much less *reasonably* relied—on Steven's alleged oral representations about "the value of

the Lurie investment" (2AC p. 15 ¶ 68), when she agreed to enter into the Settlement Agreement. *See Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996) (contractual language acknowledging that no representations have been made "destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations") (internal quotation and citation omitted, alteration in original); *Unicredito Italiano SpA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2003) (dismissing fraud claim because statements "on their face" precluded reasonable reliance).[8]

Indeed, it is well settled that courts enforce disclaimers where they "track[] the substance of the alleged misrepresentation[]." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.* 748 F.2d 729, 735 (2d Cir. 1984); *See also Dannan*, 5 N.Y.2d at 319-320 (finding where a party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed); *Sekisu Am. Corp. v. Hart*, No. 12-CV-3479, 2012 WL 5039682, at *6 (S.D.N.Y. Oct. 17, 2012) (finding Plaintiffs' reliance upon a Confidential Memorandum unreasonable in light of express disclaimer regarding the projections set forth in the Confidential Memorandum); *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 201 (N.Y. App. Div. 2012) ("Since the plaintiff stipulated in the contract that it was not relying upon any representations 'as to the very matter as to which it now claims to be defrauded,' such specific disclaimer destroys the allegations in the

---

[8]      Nor were the matters to which these disclaimers applied peculiarly within Steven's knowledge, as Plaintiff herself alleges that the facts about the Lurie Investment were publicly available from "court file[s]."  (2AC ¶ 39.)  *See HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 201 (N.Y. App. Div. 2012) (finding that plaintiffs could not justifiably rely on defendants' statements of risk where the disclosures and disclaimers made clear that plaintiffs could have discovered further risks in publicly available sources and hence "the facts allegedly misrepresented were not peculiarly within UBS's knowledge").

plaintiff's complaint that the agreement was executed in reliance upon the defendant's . . . representations.") (citations omitted).

Cohen v. Cohen, 1 A.D.2d 586 (N.Y. App. Div. 1956), is precisely on point, although the names of the parties are entirely coincidental. In the earlier Cohen case, a wife claimed that she was induced to abandon certain litigation claims by her husband's misrepresentation that he would effect a reconciliation with her, even though their separation agreement included an express disclaimer by the husband about "the continuation of the [parties'] marital status." Id. at 586. Reasoning that this disclaimer was as broad as the claimed misrepresentation, the court held that the plaintiff could not reasonably have relied on the defendant's alleged oral misrepresentation. Id. at 587-88. Here, too, where the parties expressly acknowledged in the Settlement Agreement that Steven made no representation about the value of the Lurie Investment, Plaintiff cannot now sue on an alleged misrepresentation about the value of this same asset.

## III.   THE BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED.

Patricia's breach of fiduciary duty also fail as a matter of law. As to Steven, there was no fiduciary duty because Patricia's accusations of fraud in the divorce action are inconsistent with the trust and confidence necessary to establish a fiduciary relationship. See Capasso, 765 F. Supp. at 841 ("There was no fiduciary duty here. During the divorce proceedings, Nancy Capasso demonstrated her distrust of Carl Capasso . . . . None of this behavior is consistent with the trust and confidence that are the prerequisites for a fiduciary relationship."). Here, the parties had already assumed adversarial roles when Steven submitted his Financial Statement and the parties were both independently represented by attorneys during settlement negotiations. See Etzion v. Etzion, 62 A.D.3d 646, 654 (N.Y. App. Div. 2009) (no cause of action for breach of fiduciary duty because the husband "did not have a duty arising out of the marital relationship to volunteer information freely available in the public domain").

- 21 -

Nor did Donald, as Patricia's accountant (much less as her former accountant), owe her a fiduciary duty, despite Patricia's conclusory allegation that Donald "had a fiduciary relationship with Patricia."  (2AC ¶ 18.) Under New York law, "the duty owed by an accountant to a client is generally not fiduciary in nature."  *DG Liquidation, Inc. v. Anchin, Block & Anchin LLP*, 300 A.D.2d 70, 71 (N.Y. App. Div. 2002); *see also Block v. Razorfish Inc.*, 121 F. Supp. 2d 401, 403 (S.D.N.Y. 2000) ("New York courts 'do not generally regard the accountant-client relationship as a fiduciary one.'").

Patricia alleges no special facts or circumstances that would warrant departure from that general rule here.  *See Faith Assembly v. Titledge of N.Y. Abstract, LLC*, 106 A.D.3d 47, 62 (N.Y. App. Div. 2013).  Although a fiduciary relationship may arise where accountants are directly involved in managing a client's investments, *Caprer v. Nussbaum*, 36 A.D.3d 176, 194 (N.Y. App. Div. 2006), there is no such allegation in the Amended Complaint.  Moreover, Patricia does not even allege that Donald remained her accountant and financial advisor after her 1988 separation from Steven, and it is beyond credible belief to infer as much, given Patricia's acknowledgement that Donald continued to assist his brother Steven during the separation proceedings, including working with him to prepare the Statement of Financial Condition in 1989.  (2AC ¶ 22.)

## IV.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE.

Plaintiff has had three chances to state a claim and it is clear that she cannot.  She is not entitled to another bite at an apple that has already been chewed to the core.  Her claims should be dismissed again with prejudice and Defendants should be saved the burden and expense of further litigation in this multi-decade vendetta by Patricia against her ex-husband.  *See Pohlot*, 664 F. Supp. at 118 (RICO claim dismissed with prejudice where plaintiff "failed to allege or substantiate injury to . . . business and property," or a continuing enterprise).

## CONCLUSION

For the reasons stated above, the Court should dismiss the Second Amended Complaint

with prejudice, and grant such other and further relief as the Court determines is appropriate.

Dated: July 12, 2013

WILLKIE FARR & GALLAGHER LLP

By: _____

Martin Klotz
mklotz@willkie.com
Tariq Mundiya
tmundiya@willkie.com
Jeffrey B. Korn
jkorn@willkie.com

787 Seventh Avenue
New York, New York  10019
Tel: (212) 728-8000

*Attorneys for Defendants Steven Cohen and
Donald Cohen*

- 23 -