# Exhibit  B

STIPULATION OF SETTLEMENT AND

SEPARATION AGREEMENT BETWEEN

PATRICIA COHEN

AND

STEVEN A. COHEN

DATED DECEMBER 15, 1989

## TABLE OF CONTENTS

| ARTICLE | HEADNOTE | PAGE |
|---|---|---|
| | RECITALS | 1 |
| I | PARTIES TO LIVE SEPARATELY AND FREE FROM INTERFERENCE | 3 |
| II | SEPARATE OWNERSHIP OF PROPERTY | 4 |
| III | EQUITABLE DISTRIBUTION OF MARITAL PROPERTY | 5 |
| IV | WAIVER OF MAINTENANCE | 11 |
| V | CHILD SUPPORT AND RELATED PAYMENTS TO BE MADE BY HUSBAND AND CONTRIBUTIONS BY WIFE | 13 |
| VI | OBLIGATIONS OF THE HUSBAND FOR MEDICAL AND DENTAL EXPENSES OF THE CHILDREN AND CONTINUANCE OF COVERAGE FOR WIFE UNTIL DIVORCE | 22 |
| VII | CUSTODY AND VISITATION | 24 |
| VIII | EMANCIPATION EVENTS | 32 |
| IX | OBLIGATIONS OF THE HUSBAND TO MAINTAIN LIFE INSURANCE | 34 |
| X | DEBTS AND OBLIGATIONS OF THE PARTIES | 36 |
| XI | TAX RETURNS AND LIABILITIES ON INCOME TAX | 37 |
| XII | ESTATE RIGHTS AND WAIVERS | 41 |
| XIII | ATTORNEY FEES AND COSTS IN CONNECTION WITH ENFORCEMENT OF THIS AGREEMENT | 42 |

(i)

| ARTICLE | HEADNO | PAGE |
|---|---|---|
| XIV | ADVICE OF COUNSEL, DISCLOSURE AND BASIC FAIRNESS OF THIS AGREEMENT | 43 |
| XV | THE DIVORCE JUDGMENT | 46 |
| XVI | EFFECT OF BANKRUPTCY OR ASSIGNMENT | 47 |
| XVII | RECONCILIATION AND MATRIMONIAL DECREE | 48 |
| XVIII | COUNSEL FEES | 49 |
| XIX | GENERAL PROVISIONS | 50 |
| | EXHIBITS | |
| | ACKNOWLEDGMENTS | |

STIPULATION OF SETTLEMENT AND
SEPARATION AGREEMENT BETWEEN
PATRICIA COHEN
AND
STEVEN A. COHEN

STIPULATION OF SETTLEMENT AND SEPARATION AGREEMENT
made this 15th day of December, 1989, by and between PATRICIA
COHEN (hereinafter referred to as the "Wife"), and STEVEN A.
COHEN (hereinafter referred to as the "Husband")

R E C I T A L S:

A.   The parties were married on the 12th day of
December, 1979 in the City, County and State of New York.

B.   The issue of the marriage are:  JESSICA LYNN
COHEN, whose birthdate is January 19, 1981 and ROBERT MATTHEW
COHEN, whose birthdate is July 24, 1985.  Jessica Lynn Cohen
and Robert Matthew Cohen are hereinafter referred to
individually as "Child" and collectively as "Children".

C.   Diverse disputes and differences have arisen
between them, and as a result Husband and Wife have ceased to
cohabit as man and wife and have lived and continue to live
separate and apart from each other.

D.   Husband has heretofore served a summons with
notice in an action for divorce based upon alleged cruelty and
a stipulation has been entered into by counsel extending
Husband's time to serve a complaint and for Wife to interpose
an answer.

E.   Husband and Wife desire to adjust and settle the pending lawsuit and all matters concerning their property rights, past, present and future maintenance, child support, custody, visitation and related matters.

F.   Husband and Wife have been fully, separately and independently advised of their legal rights and obligations and have been fully informed of their respective property rights.

G.   Husband and Wife fully understand the terms, conditions and provisions of this Agreement and believe it to be fair, just, adequate and reasonable as to each of them, and accordingly, both of them freely and voluntarily accept the terms, conditions and provisions of this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual promises and understandings herein contained and, for other good and valuable consideration, the parties hereto agree to the provisions set forth in this Agreement.

## ARTICLE I

### PARTIES TO LIVE SEPARATELY AND
### FREE FROM INTERFERENCE

1.1  The parties will continue to live separate and apart from each other for the rest of their lives, and each party may engage in any occupation, employment or business without the consent of the other party, in all respects as if unmarried.

1.2  Each of the parties may reside, from time to time, in such places as he or she may deem fit and Husband recognizes the right of Wife to live at any place she desires with the Children free from any restraint by Husband, except as otherwise set forth in Article VII hereof.

1.3  The parties shall be free from all control, direct or indirect, of the other party, and free from molestation, restraint and interference by the other party, as fully and in the same manner as if unmarried.  Neither of the parties shall attempt to compel the other to cohabit or dwell with him or her by any legal or other proceedings for the restoration of conjugal rights or otherwise.

## ARTICLE II

### SEPARATE OWNERSHIP OF PROPERTY

2.1   Except as otherwise expressly set forth in this Agreement, each party shall own, free of any claim or right of the other, all of the items of property, real, personal and mixed, of any kind, nature or description and wheresoever situated, which are now in his or her name, control or possession, with full power to him or to her to dispose of the same as fully and effectually, in all respects and for all purposes, as if he or she were not married.

2.2   Each party shall herewith deliver to the other party all property or documents, as provided in this Agreement, evidencing ownership of property which by the terms of this Agreement is to remain or become the property of the other.

## ARTICLE III

## EQUITABLE DISTRIBUTION OF MARITAL PROPERTY

The parties agree to effect the following equitable distribution and division of their property, hereby acknowledging that as far as each of the parties is concerned, the following provisions of this Article take into consideration all relevant factors, including those set forth in Part B, Section 236 of the Domestic Relations Law of the State of New York.

3.1  Wife shall have and keep all of the furniture and personal property currently located at the family residence at 120 East End Avenue, New York, New York, except that Husband shall have such art work as are set forth in paragraph 3.11. Husband waives and relinquishes any right or claim to property belonging to Wife.  Wife waives and relinquishes any right or claim to the art work set forth in paragraph 3.11.

3.2  Husband and Wife shall each have and keep all of their personal clothing and jewelry and each waives and relinquishes any right or claim that they may have to such property of the other.

3.3  The parties have joint title to eight hundred eighty (880) shares of stock in the cooperative apartment (the "Shares") known and described as Apartment 10A at 120 East End Avenue, New York, New York (the "Cooperative Apartment").

3.4  The Husband warrants, represents and covenants to Wife that he has paid all maintenance charges to date and that

- 5 -

he has not encumbered, ( )ated or caused, voluntarily or involuntarily, directly or indirectly, liens, mortgages, judgments, or the like of any kind or nature to be placed on or against the Cooperative Apartment.

3.5   Simultaneously herewith as and for the Wife's equitable distribution of the marital estate:

(a)   The Husband hereby transfers all his rights, title and interest in and to the Cooperative Apartment to the Wife.   Husband shall execute a Stock Power in favor of Wife, conveying to Wife all of his right, title and interest in and to the Shares and an assignment of the Proprietary Lease, said Shares and Lease to thereafter be the sole and exclusive property of Wife and agrees to execute and deliver any other instruments, conveyances or documents which may be reasonably necessary to transfer the former marital residence into the Wife's sole name.   The Wife shall execute an assumption of all tenant's obligations under the Proprietary Lease and the Wife will pay all costs incurred in connection with the transfer of the former marital residence into Wife's name; and

(b)   Husband has paid to Wife the sum of One Million Dollars ($1,000,000.00) by check, the receipt of which is hereby acknowledged by Wife.

3.6   Commencing on the first day of the month following execution of this Agreement, Wife shall assume and agrees to timely satisfy any and all costs and expenses attributable to the ownership, use and upkeep of the Cooperative Apartment including, but not limited to, maintenance, utilities,

- 6 -

insurance, telephone and real estate taxes.   Effective on and after such date, Wife shall indemnify and hold Husband free and harmless from any and all such debts, liabilities and obligations.

3.7   Any stocks, bonds, cash, bank accounts or any other assets in Wife's name solely, shall be considered to be separate property of Wife, and Husband waives and relinquishes any right or claim that he may have in the same.

3.8   Any stocks, bonds, cash, bank accounts or any other assets in Husband's name solely, including, without limitation, Husband's 1986 560 SEL Mercedes Benz automobile, shall be considered to be separate property of Husband, and Wife waives and relinquishes any right or claim that she may have in the same.

3.9   The parties acknowledge and agree that by this Agreement they have equitably distributed between them, to their mutual satisfaction, pursuant to Part B, Section 236 of the Domestic Relations Law of the State of New York, all of the separate and marital property of the parties, and both Husband and Wife agree that the division of said properties pursuant to the terms of this Agreement is fair and reasonable.

3.10 The parties agree that any distribution or payment made to Wife pursuant to this Article III is a distribution of marital assets and not a payment of alimony or maintenance.

3.11 The parties agree that Husband shall own the works of art consisting of the 4 panels painted by Joan Mitchell and the painting by Terri Winter.  Husband agrees that he shall be solely responsible for any sums owed to third parties in connection with such paintings and will save and hold Wife harmless from any claims in connection with such works of art.

3.12 Each of the parties may be a participant in a qualified pension, profit sharing plan or I.R.A.s governed by ERISA and the Internal Revenue Code which may provide for an automatic benefit to the spouse if a participant is married.

3.13.1  The Wife hereby relinquishes all claims and rights which she may now have or may hereafter acquire or possess to share in any capacity or to any extent, in any pension, profit-sharing, IRA, 401(k) plan, or any other retirement, defined benefit or deferred compensation plan established for the Husband that may exist now or in the future.  The Wife hereby covenants and agrees that she will execute such spousal waivers as may be required under the Pension Reform Act of 1974, the Retirement Equity Act of 1984 or any similar federal or state statute that may be enacted. This paragraph is intended to substitute for any other statement, prepared form or document that might be required by any Plan, Fund, Trust, Administrator, Trustee or similar entity

- 8 -

or person so that the Husband may receive said benefits as if he were, in fact, unmarried.

3.13.2   The Husband hereby relinquishes all claims and rights which he may now have or may hereafter acquire or possess to share in any capacity or to any extent, in any pension, profit-sharing, IRA, 401(k) plan, or any other retirement or deferred compensation plan established for the Wife that may exist now or in the future.   The Husband hereby covenants and agrees that he will execute such spousal waivers as may be required under the Pension Reform Act of 1974, the Retirement Equity Act of 1984 or any similar federal or state statute that may be enacted.   This paragraph is intended to substitute for any other statement, prepared form or document that might be required by any Plan, Fund, Trust, Administrator, Trustee or similar entity or person so that the Wife may receive said benefits as if she were, in fact, unmarried.

3.14   The Husband and Wife accept the provisions herein made for each of them in lieu of and in full settlement and satisfaction of any and all claims and rights against the other for his or her support and maintenance, and in full settlement and satisfaction of any and all other claims and rights whatsoever which they ever had, have or might have against the other by reason of their relationship as Husband and Wife.   Each party hereby releases and acquits the other and his or her estate of and from any claims, liabilities and

- 9 -

obligation whatsoever, e1  pt as are specifically assumed by or imposed hereunder.  It is the intention of the parties that, except as otherwise provided, all liability of whatsoever nature on the part of either party to the other, past, present and future, actual or potential, whether arising from their relationship as Husband and Wife or otherwise, shall cease and terminate absolutely and forever.

## ARTICLE IV

### WAIVER OF MAINTENANCE

4.1   Each of the parties declares and acknowledges that he/she is, or will be upon receipt of the property transferred pursuant to Article III hereof, possessed of sufficient income and assets to support himself/herself, and each hereby waives for all time any rights he/she may have or hereafter acquire to receive support or maintenance from the other.

4.2   The parties each acknowledge that they believe this Agreement and, specifically, the release and waiver of maintenance, support, alimony and necessaries by the Wife, to be entirely fair and reasonable.

4.3   Based upon all of the foregoing, each party, to the extent permitted by law, hereby waives the right to apply for a modification of this Agreement or the final Judgment of the Court, or to seek additional payments by the other by way of support or otherwise and each party agrees not to seek any of the foregoing.

4.4   If either party is compelled to seek the services of an attorney to defend any action, application or proceeding for maintenance notwithstanding the above waiver in Paragraph 4.1, then the party who institutes such action, application or proceeding shall pay to the other his/her reasonable costs and expenses for such legal services including, but not limited to, reasonable counsel fees and disbursements incurred.   The

- 11 -

aggrieved party shall h₂e the option to include such costs and expenses in any such action or to proceed against the other party for such costs and expenses by an independent action to recover the same.

## ARTICLE V

### CHILD SUPPORT AND RELATED PAYMENTS TO BE MADE BY HUSBAND AND CONTRIBUTIONS BY WIFE TO CHILD SUPPORT

5.1   Husband shall be responsible for the support, maintenance and education of the Children in accordance with the provisions of this Article V.

5.2   Beginning with the date hereof and continuing thereafter until the occurrence of an "emancipation event" as defined in Article VIII takes place with respect to each Child, Husband shall:

(i)   pay to Wife for each Child the sum of One Thousand One Hundred Fifteen ($1,115) Dollars per month commencing on the first day of the month succeeding the execution hereof and each month thereafter (the "Base Amount"), adjusted as hereinafter provided, such payment to be made by mail to the residence of Wife.  While a Child resides away from Wife's home and is in attendance at boarding school, college or similar institution (the "Absent Period") the amount paid to Wife by Husband for clothing, food, books and laundry/dry cleaning for a Child shall be reduced by the actual amount which Husband has paid for clothing, food, books and laundry/ dry cleaning, but the reduction per month per Child for each of such items shall not exceed the following:  clothing $425, food $325, books $20 and laundry/dry cleaning $25.  Husband shall pay such amounts required for clothing, food, books and laundry/dry cleaning during the Absent Period directly or to the Child involved.

- 13 -

(ii)   Commencing on the first day of the month following execution of this Agreement, Husband shall pay to Wife monthly, while Wife is unmarried, one-half of the anticipated expenditures by Wife in connection with the maintenance of a residence (the "Residence Amount") and one-half of the anticipated expenditures by Wife in connection with Child care or housemaid ("the Housemaid Expense"). However, Husband's share of the Residence Amount and the Housemaid Expense shall not exceed Seven Hundred Fifty ($750) per month for each of said anticipated expenditures.  This Housemaid Expense shall be eliminated when both Children are away from home at boarding school, college or similar institution or both children no longer permanently reside in Wife's home.  If Wife marries but such marriage is dissolved or terminated, Husband's payments under this subdivision (ii) shall be resumed upon the mailing of a copy of any judgment dissolving or terminating such marriage(s) to Husband, notifying Husband that Wife is no longer married.

(iii)   The support payable by the Husband pursuant to paragraph 5.2(i) and (ii) of this Article shall be subject to increase based upon any increases in the Consumer Price Index for All Urban Consumers for the New York-Northeastern New Jersey Area (hereinafter called the "CPI") or the National CPI published by the United States Bureau of Labor Statistics if the Wife is living outside of said area, upon or subject to the following terms and conditions:

- 14 -

(a)   The ( ) figure published for January, 1990 shall be considered the Base Figure.  The CPI figure for January of each year thereafter commencing 1991 (the "Measuring Figure") in which the Husband is required to make payment pursuant to this Article shall be compared with the Base Figure.  If the Measuring Figure shall exceed the Base Figure, then the amount payable to the Wife for each month during the twelve month period commencing as of January of any such year pursuant to this Article V shall be increased (hereinafter any such increase is referred to as the "Cost of Living Adjustment") by the percentage determined by a fraction calculated as follows:  The denominator of such fraction shall be the Base Figure and the numerator of such fraction shall be that amount by which the Measuring Figure exceeds the Base Figure.  For example, if the CPI figure for January, 1990 shall be 98 and the CPI figure for January, 1991 shall be 110, the Cost of Living Adjustment would be equal to 12.24% multiplied by the amount payable pursuant to this Article for each month during the twelve month period commencing as of January, 1991.

(b)   Any increased amounts payable as of January 1 of such year hereunder shall be paid promptly after such determination.

- 15 -

(c)   In the event of a dispute, the parties agree to promptly submit the issue to arbitration in accordance with the Arbitration Rules for Interpretation of Separation Agreements of the American Arbitration Association and judgment upon the award rendered may be entered in any Court having jurisdiction thereof.

5.3   Husband shall promptly pay summer camp expenses directly and shall consult with Wife with regard to such expenses.  If Husband fails to make such payments and the Wife makes such payments, Husband shall promptly reimburse to Wife sums expended by her for the summer camp expenses of the Children (day camp or sleep-away camp).  Summer camp expenses shall include tuition or enrollment fees, canteen monies, transportation to and from camp, supplies, uniforms and necessary special clothing.

5.4   (i)   Husband shall be responsible and pay for the private school expenses, college, school of fine arts or similar institution education expenses of the Children.  In addition Husband shall be responsible and pay for (a) such special tutoring (as recommended by the school that each Child attends or upon agreement of the parties or any party named in paragraph 5.5 hereof and if there be no psychiatrist then to resolve the issue, it shall be promptly submitted to arbitration as provided in Paragraph 5.5(b)) and (b) extra curricular school or post-school activities, but limited to two

- 16 -

activities per week for each Child, i.e. piano lessons, sports clubs, ballet lessons, etc.

(ii) "Private school expenses" are defined as tuition, transportation, dues, fees, books, academic supplies, board and lodging if away from the home and such other and reasonable fees and charges as may be assessed by the school attended in connection with activities associated therewith.

(iii) "College, school of fine arts or similar institution education expenses" are defined as tuition, transportation, dues, fees, books, academic supplies, board and lodging, if away from the home, lab fees and equipment, examination fees, and such other reasonable charges as may be assessed by the college, school of fine arts or similar institution in connection with activities associated therewith including all charges for tests required for entrance into a college, school of fine arts or similar institution and application fees for any such institution and transportation for interviews at any such institution, provided, however, that these expenses shall be borne by Husband so long as a Child is a fully matriculated student at a college, school of fine arts or similar institution.

(iv) "Special tutoring" and "extracurricular expenses" shall include, but not be limited to, such things as the cost of instruction by tutors in academic subjects or instruction in music, arts or sports and participation in any sports, purchase of related instruments or equipment,

- 17 -

transportation, tuition fees, books, other supplies, and such other and reasonable fees as may be required.

5.5 (a) The parties agree and intend that both of them together with the Child in question shall confer and agree upon the camp, private school, college, school of fine arts or similar institution which the Child shall attend, or the extra curricular activities in which the Children shall participate and that neither party shall unreasonably withhold such agreement.

While it is the intention of the parties to endeavor at all times to cooperate in resolving such questions, they realize that agreement may not be possible in all cases and where an irreconcilable issue arises, both parties agree to submit an issue to Dr. Phyllis Siegel, who shall, make a recommendation to the parties.

(b) In the event that either party disagrees with the recommendation of Dr. Siegel, the parties agree to promptly submit the issue to arbitration in accordance with the Arbitration Rules for Interpretation of Separation Agreements of the American Arbitration Association and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

5.6 Notwithstanding that a Child might be deemed emancipated pursuant to the provisions of Article VIII of this Agreement, the Husband agrees to pay for the undergraduate education for such Child at college or similar institution, until a Child attains the age of 24.

- 18 -

5.7   The parties agree that the Children shall be raised in such religious aith as Wife shall, in her discretion, determine.

5.8   Notwithstanding the provisions of Article V which require Husband to support the Children, Wife has agreed that she will also contribute to child support based upon the formula described in subparagraph 5.9, which contribution will reduce Husband's child support obligations pursuant to Paragraph 5.2(i) of this Agreement.

5.9   The Husband's payments to the Wife pursuant to Paragraph 5.2(i) hereof, as adjusted by the CPI, shall be decreased by the Wife's contribution for support of the Children for each calendar year and shall be calculated as follows:  Twenty-five (25%) percent of the excess over Fifty Thousand ($50,000) Dollars of "Wife's Contribution Base" as hereinafter defined subject to the limitation provided for in subparagraph 5.11.  "Wife's Contribution Base" shall be equal for each calendar year the Wife's earned income for such year ("Earned Income"), less all income taxes required to be paid by Wife on the Earned Income for such year.  "Earned Income" shall be that income generated by providing goods, services and any other income that is defined as "Earned Income" in the Internal Revenue Code now in force or as may be amended together with all capital gains (other than those derived from the sale of the Wife's primary residence including the sale of Apartment 10A, 120 East End Avenue, New York, New York) and not

including dividends, interest, rentals, and support payments, which shall not be included in such definition.

5.10 Wife agrees to provide Husband, no later than April 15th of each year, with an accountant's statement, sworn to by the Wife, of her income for the previous year. The statement shall contain calculations of the contribution for child support made by Wife for the previous calendar year together with an accounting of any sums spent by Wife toward child support for such previous year. In the event that Wife has not spent for child support the full amount required by the computation set forth in Paragraph 5.9, Wife on April 15th, together with such computation, shall pay any deficit to Husband.

5.11 Notwithstanding anything contained herein to the contrary, Wife shall never be obligated to contribute in any year more than fifty (50%) percent of the support of the Children provided for in Paragraph 5.2(i) as may be modified from time to time by Paragraph 5.2(iii) of this Agreement and if Wife's net worth falls below Two Million ($2,000,000) Dollars, Wife shall not be required to make any contribution to child support.

5.12 Contributions to child support by Wife shall not be made to Husband nor shall they be income to Husband and/or deductions to Wife.

5.13 The parties to this Agreement have been advised of the provisions of Domestic Relations Law § 240(1-b), a statutory provision commonly known as the Child Support

Standards Act. A copy ℇ the Child Support Standards Act is annexed to this Agreement as Exhibit "A". The parties acknowledge that they have reviewed the provisions of such statute, understand them, and have had a full opportunity to discuss them with counsel. The parties further understand that in the absence of this Agreement between them, the provisions of the Child Support Standards Act would govern the determination of the amount of the child support obligation to be paid by the non-custodial parent. Notwithstanding said statutory provisions, the parties wish to enter into the present Agreement relative to child support, and hereby waive application of the provisions of the Child Support Standards Act.

- 21 -

## ARTICLE VI

### OBLIGATIONS OF THE HUSBAND FOR MEDICAL AND DENTAL EXPENSES OF THE CHILDREN AND CONTINUANCE OF COVERAGE FOR WIFE UNTIL DIVORCE

6.1  Husband shall be solely responsible for and shall promptly pay for all required prescription drugs, reasonably necessary medical, including but not limited to psychiatric counseling, routine physical examinations, pediatric examinations and treatment, dental (including orthodontia, if necessary), optical, surgical, nursing and hospitalization expenses for each Child until an Emancipation Event shall have occurred with respect to such Child.

6.2  The Husband shall maintain Major Medical, Blue Cross-Blue Shield and like coverages for the benefit of the Children.

6.3  Should Wife, for any reason, be caused to expend monies for the benefit of the Children of the nature described in paragraph 6.1 hereof, Husband agrees to promptly reimburse her therefor upon submission of proof of such payment.

6.4  In the event there is a dispute between the parties regarding any issue arising under 6.1, supra, which the parties cannot resolve, such dispute shall be submitted to and resolved by psychiatrist, Phyllis Siegel, so long as Wife resides in New York and is still consulting Ms. Siegel.  In the event Wife does not reside in New York or does not consult with Ms. Siegel, such issue will be determined by the Child's then treating pediatrician.

- 22 -

6.5   Husband shall provide copies of all such medical insurance policies to Wife upon execution of this Agreement.

6.6   Husband agrees to keep and maintain the policies of medical insurance providing coverage to Wife as long as coverage is permitted under such policies prior to divorce, provided, however, that Husband shall not pay premiums on any policy subject hereto after the parties divorce.

6.7   If the parties are hereafter divorced, the Wife shall, under the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), have the option to have the same or similar medical and hospital coverage as is currently in force for the Wife's benefit through the Husband's policy, for a period of three years, at her sole expense.

6.8   Husband shall be consulted in all medical matters pertaining to the Children unless an emergency prevents such consultation and Husband will not unreasonably withhold consent regarding all health, medical and dental matters.

- 23 -

## ARTICLE VII

### CUSTODY AND VISITATION

7.1  Wife and Husband shall have joint custody of the unemancipated Children of the parties.  However, the primary residence of the Children shall be with Wife and Wife shall have basic day to day supervision, control and care, subject, however, to the rights of Husband as herein provided.

7.2  (a)  The Children shall reside with Wife within a radius of 50 miles from Columbus Circle in New York City (the "Restricted Area"), so long as the Husband resides therein, until such time as an Emancipation Event shall occur as to each Child.

(b)  The restriction set forth in 7.2(a) hereof shall not apply if Wife shall remarry.  In such event, Wife may move with the Children to any place without restriction.

(c)  Wife and Husband agree that in the event Wife intends to move out of the Restricted Area, pursuant to subparagraph (b) above, Wife shall give Husband sixty (60) days written notice and the parties shall discuss the terms of additional or expanded visitation rights for Husband.  If they cannot agree upon such terms, the parties shall submit such issue to Dr. Phyllis Siegel, who shall make a recommendation to the parties.  In the event either of the parties disagrees with Dr. Siegel's recommendation, the parties agree that the issue of appropriate visitation shall be promptly submitted for determination by a Court of competent and original

- 24 -

jurisdiction.  Both parties agree to cooperate in seeking an expedited hearing and decision by such Court but the pendency of any such proceeding shall not affect Wife's right to move and relocate after remarriage and Husband shall not have the right to restrain Wife from moving with the Children.

7.3  The parties agree to cooperate with each other so as to advance the Children's health, emotional and physical well-being and to give and afford the Children the affection of both parents and a sense of security.  Neither will, directly or indirectly, influence the Children so as to prejudice the Children against the other.  Each will endeavor to guide the Children so as to promote the affectionate relationship between the Children and Husband and the Children and Wife.

7.4  Each party shall promptly inform the other with respect to any illness or accident involving a Child and each agrees to furnish a copy of any medical report or evaluation received to the other.  Each party also agrees to furnish a copy of any report or evaluation received from any school or college regarding the Children to the other.

7.5  Husband and Wife shall at all times inform one another with respect to the residence of the Children and the residence of one another and any change in the residence of the Children.

7.6  Husband and Wife at all times shall inform one another with respect to the physical whereabouts and location of the Children.

- 25 -

7.7   The Husband shall be entitled to visitation periods with a Child or with the Children on the following schedule so long as both parties reside within the same metropolitan area:

(a)   One evening each business weeknight from 6:00 PM to one-half hour before the Child's normal bedtime at the Husband's selection, provided the Husband shall notify the Wife by the Thursday of the immediately preceding week which evening he has selected for such visitation; however, such visitation shall not involve "sleep-over" during the week.

(b)   (i)   Every other weekend, commencing on either Friday at 6:00 PM or Saturday at 9:00 AM and terminating on Sunday one half hour before the Child's normal bedtime. Husband's first such weekend shall be the one commencing on the first Friday evening following the execution of this Agreement.

(ii) In the alternative, every weekend, on either Saturday or Sunday, but such days shall be alternated in successive weeks so that Husband shall not have visitation on the same weekend day for successive weekends, and provided, further, that any such successive weekend visitation is subject to the further premise that Wife and the Children are in New York on such weekend.

(c)   On the birthday of a Child for not less than three hours, such time to be arranged so that it shall not interfere with such Child's school hours or other birthday

- 26 -

activities and on Husband's birthday for not less than three hours at such times when Husband is not then working, such time to be arranged so that it will not interfere with the Children's school hours.

(d)   On all national holidays in alternate years and the only exception to the foregoing shall be that, if a national holiday falls on a Monday, the party who has that particular weekend with the Children shall have the further right to have the Children on that extra day.  Such visitation shall then terminate at 8:00 PM on Monday.

(e)   In the event a specific holiday granted to one party falls on a Monday after a weekend granted to the other party, the party whose weekend it is shall also have the Monday holiday that year, and the parties agree to adjust one of the holidays in the months following to compensate the party whose Monday holiday is lost thereby.

(f)   On Christmas Day and on Thanksgiving Day for not less than four hours, such time to be arranged so that it will not interfere with Wife's celebration of Christmas and Thanksgiving with the Children.  The parties agree that on Christmas Day and Thanksgiving Day visitation shall be shared.

(g)   Notwithstanding any other provision herein, the Children will be with the Wife on each Mother's Day and with the Husband on each Father's Day.

- 27 -

(h)  In addition, Husband shall be entitled to extended visitation at Husband's option as follows:

(i)  one-half of the period of summer vacation that the Children are not at sleep-away camp, subject to the condition that, until a Child is age 10, the period that Husband shall have custody of the Child away from Wife shall be limited to a ten (10) day period at a time and Wife shall have such Child for a one-week period and after age ten (10) to a two-week period and Wife shall have such Child for a one week period, provided, however, that Wife is entitled to take the Children on two (2) three-week vacations each summer, the first such vacation to be at such time in June as the parties mutually agree and the second such three-week vacation to be at such time in July or August subject to the Husband's vacation with the children during the month of August.

(ii)  One-half of the three (3) main school recesses and vacation periods, (1) the Christmas-New Year's period commencing  the day after Christmas, (2) the Washington-Lincoln's Birthday period and (3) the spring vacation period.

(iii)  Until a Child is age 10, the period that Husband shall have custody of such Child away from Wife shall be limited to a ten-day period at a time and Wife shall have such Child for a one-week period and after age 10 Husband shall have custody of such Child for a two-week period and Wife

- 28 -

shall have such Child for a one-week period.  The purpose of this paragraph is not to have the Children away from Wife for too long a continuous period.

(iv)  As to the periods covered by subparagraph (h) hereof, the Husband shall give the Wife at least three (3) weeks prior written notice of his intention not to exercise such visitation rights.

(i)  If Husband cancels visitation, after giving notice, he must bear the expense which Wife may incur due to loss of deposits, but if Wife's trip is related to Wife's business then Husband must pay for the Children to accompany Wife until Robert is age 10.

(j)  If a Child is in day camp during the summer, during the week Husband may have one overnight visitation and one dinner per week provided the Child has attained the age of 4-1/2.

(k)  Husband may enjoy such visitation at such other or different times as the parties may hereafter agree upon in writing.

7.8  All visitation rights of Husband are and shall be optional in all instances with Husband and his failure to exercise any of his rights of visitation on any occasion shall not constitute a waiver of his right to insist on compliance with the visitation provisions on other occasions.  Husband shall have the option to enjoy visitation with the Children together or separately.

- 29 -

7.9  All arrar  ments regarding visitation with the Children shall be made on reasonable notice from Husband to Wife.

7.10  Husband shall have telephone access to the Children at all reasonable times.

7.11  (a)  In the event there is a dispute between the parties regarding any issue arising under this Article VII which cannot be resolved by agreement of the parties, it shall be resolved in the same manner as provided in Article V subdivisions 5.5 (a) and (b) for resolution of disputes arising under that article.

(b)  On or after the third anniversary of the execution of this Agreement, the provisions of paragraph 7.7 (h)(i) of this Agreement for summer visitation may be revised by the parties and, in the event the parties are unable to reach an agreement on such summer visitation, the matter shall be resolved in the same manner as provided in Article V subdivisions 5.5 (a) and (b) for resolutions of disputes arising under that Article.

7.12  The parties agree that the Children shall never sleep in any place while on visitation with Husband if Husband is not physically present and resident at such place.  The Children are never to sleep over at any place with friends, relatives, any future Wife of Husband unless Husband is present and resident thereat, i.e., if the Children are in "the Hamptons" with Husband, Husband shall not make business trips

leaving the Children w' others overnight provided, that if any situation arises where Husband will not be in the same residence overnight, Husband will promptly notify Wife who will have the option to take custody of the Children in any such instance.

## ARTICLE VIII

## EMANCIPATION EVENTS

Emancipation for the purpose of this Agreement shall occur on the earlier happening of any of the following events:

(i)  Attaining the age of 21 years, unless the Child shall be pursuing a reasonably continuous course of college education leading to an undergraduate degree as a full-time day, undergraduate student, at an accredited college, university, school of fine arts or similar institution, in which event emancipation shall not take place until the Child has completed studies for an undergraduate degree or the Child has sooner attained the age of 23 years, unless another emancipation event shall have previously occurred;

(ii)  The marriage of a Child;

(iii)  The entry of a Child into the military service, such emancipation to continue only so long as the Child is active in such military service.  In the event of discharge prior to the happening of another emancipation event, the Child shall again be deemed to be unemancipated until the occurrence of another emancipation event;

(iv)  The Child engaging in full-time employment and being fully self-supporting after the Child has attained the age of eighteen (18) years, except that engaging by the Child in part-time employment (less than thirty (30) hours a week) shall not constitute emancipation and engaging by the child in full-time employment during vacation and summer

- 32 -

periods and school intersessions shall not be deemed emancipation.  Emancipation stemming from the employment shall be deemed terminated upon the cessation by the Child of full-time employment before any other emancipation event, and the Child shall again be deemed to be unemancipated until the happening of another emancipation event;

(v)  The death of Husband, the death of Wife or the death of the Child.

(vi)  The award of sole custody of the Child to the Husband or establishment by the Child of a permanent residence, for a period of more than six consecutive months, other than with the Wife.  A Child's residence at boarding school, camp, college or a similar institution is not to be deemed the establishment of a permanent residence away from the residence of the Wife.

## ARTICLE IX

### OBLIGATION OF THE HUSBAND
### TO MAINTAIN LIFE INSURANCE

9.1  Within thirty (30) days following the execution of this Agreement, Husband shall obtain, keep and maintain a renewable term life insurance policy of One Million ($1,000,000) Dollars on his life, paying all premiums due thereon, when due, with Wife, as trustee and irrevocable beneficiary for the benefit of the unemancipated Children.  The face amount of said policy shall be reduced by one-half upon the occurrence of an Emancipation Event with respect to one of the Children and the obligation shall cease when an Emancipation Event shall have occurred as to the second of the Children.

9.2  Husband shall not borrow against any life insurance policy maintained by him pursuant to this Article or in any manner pledge or encumber said policies of insurance without the prior written consent and permission of Wife.

9.3  Husband shall promptly notify Wife when the policy of insurance referred to in paragraph 9.1 is in effect. Any premium paid by Wife under this Article to avoid cancellation of an insurance policy shall be paid to her by Husband upon demand.  Any unpaid premiums advanced by Wife shall be a charge upon Husband's estate.  Neither (a) payment of premiums by Husband nor (b) repayment of premiums advanced by Wife shall be considered as maintenance payments taxable to Wife.

- 34 -

9.4   If the policies are not in full force and effect as herein provided at the time of Husband's death, the Wife and/or the Children shall have a creditor's claim against Husband's estate for the difference between the amount of insurance required hereunder and the amount Wife actually receives thereon upon Husband's death.

9.5   Upon written request, Husband shall provide Wife with copies of the actual insurance policies obtained by him in accordance with this Article IX and proof of payment of all premiums.

9.6   The insurance proceeds provided in this Article shall be paid to the Wife, as trustee and irrevocable beneficiary for the benefit of the unemancipated Children, free and clear of any transfer, estate, inheritance or income tax.



FILED
MAR 14 1990
COUNTY CLERK'S OFFICE
NEW YORK

## ARTICLE X

## DEBTS AND OBLIGATIONS OF THE PARTIES

All of the debts and obligations of the parties shall be settled as follows:

(a)  Husband shall be responsible for and pay for only those family incurred debts of which he is aware at the time of the signing of this Agreement except as otherwise specifically provided herein.  Wife represents and warrants that there are no debts or obligations that she has incurred for herself or the Children other than listed on Exhibit "B". Husband shall be responsible for and pay the debts listed on Exhibit "B".  Wife shall be responsible for and pay any debts incurred solely by her not listed on Exhibit "B" and Husband shall be responsible for and pay all debts incurred by him.

(b)  The parties hereto covenant and agree that each will not, at any time, contract any debts, charges or liabilities whatsoever for which the other party, his or her legal representatives, heirs and assigns or their property or estate shall or may become or may be liable other than pursuant to this Agreement; said parties agree to keep the other party, their legal representatives, heirs and assigns free, harmless and indemnified of and from any and all debts, charges and liabilities heretofore or hereafter contracted or incurred by said parties, including any future obligations incurred by either party for necessaries for himself or herself, or the Children, except where either party is responsible for the same under this Agreement.

- 36 -

## ARTICLE XI

## TAX RETURNS AND LIABILITIES ON INCOME TAX

11.1 Husband and Wife have heretofore filed joint Federal, State and New York City income tax returns and at the option of Husband, Wife agrees to file joint income tax returns for 1988. Wife shall have the opportunity to have any such return reviewed by Wife's accountant prior to her signing.

11.2 Husband shall be responsible for and shall pay all income taxes for the year 1988 on the assumption that Wife had no income in 1988.

11.3 Husband will promptly pay any and all tax assessments, liabilities and/or penalties and interest imposed on any joint income tax returns filed by Husband and Wife except to the extent that any such assessments are caused by Wife's failure to declare income or where Wife has taken improper deductions.

11.4 Husband agrees to indemnify and hold Wife harmless from all tax assessments, liabilities, penalties, interest, accounting and legal fees incurred by Wife in connection with filing any joint income tax returns with Husband except to the extent that the aforesaid are created by Wife's failure to declare income or where Wife has taken improper deductions.

11.5 Wife agrees to hold Husband harmless from all tax assessments, liabilities, penalties, interest, accounting and legal fees incurred by Husband occasioned by Wife's failure to declare income or where Wife has taken improper deductions.

11.6 Wife agrees to provide Husband with the necessary income and expense data within 30 days prior to the date Husband notifies Wife of his intention to file but in no event, prior to March 15 so that the joint income tax return may be timely prepared and filed.  Husband shall give notice prior to March 15, that he desires to file a joint income tax return.

11.7 The Husband and Wife agree that the Husband shall be entitled to claim the deduction for the dependency exemption for the Children on his income tax returns, so long as the support payments provided for in this Agreement are paid by him.  The Wife agrees to execute such necessary documents, including any form required by the Internal Revenue Service, to enable the Husband to claim the dependency exemptions for the Children.  However, in the event the claiming of the dependency exemptions for the Children by the Husband would not reduce his federal income tax liability for any tax year, the Wife may claim such dependency exemptions for such year.  Thirty days prior to April or any extended date for the filing of the Husband's return (Extended Date) following a tax year, the Husband shall advise the Wife that he cannot utilize the dependency exemptions.  Otherwise, he shall provide to the Wife a letter no later than April 15 or any Extended Date

immediately following the tax year at issue by his accountant stating that the Husband can obtain a tax benefit by utilizing such dependency exemptions.

11.8 Husband warrants and represents that all joint income tax returns heretofore filed were true and complete to the best of his knowledge and belief, that all liabilities thereon have been fully paid, and that there is no pending audit or examination of such returns except audits by the City of New York for the years 1985, 1986, 1987 and the I.R.S. for 1986.  In any event, Husband shall pay all liabilities hereafter assessed or imposed with respect to such income tax returns (including taxes, interest and penalties) and will indemnify Wife against and hold her harmless from all such liabilities and expenses, losses and damages as may be incurred by her in connection with those returns except to the extent that Wife has failed to declare income or has taken improper deductions.

11.9  All audits, examinations, suits or other proceedings in connection with income tax returns heretofore filed or which occur hereafter, including, but not limited to the pending audits referred to above, shall be handled at Husband's cost and expense or by counsel or accountants selected by him but, at the request of Husband, Wife shall participate therein and will execute papers to the extent reasonably required by such counsel or accountants provided that Wife's own counsel or accountants have approved same.

- 39 -

11.10 All refunds recovered with respect to joint returns heretofore filed or which shall hereafter be filed for the year 1988 shall belong to Husband.  For refunds for 1988 and prior tax years, Wife accords Husband the authority and right to endorse her name on any income tax refund check.

11.11 It is the understanding of the parties that Wife shall not include the amounts paid by Husband or received by Wife under Articles III, V, VI, IX, X and XI as income in any income tax return filed with federal, state or local taxing authorities and Husband shall not claim a deduction with respect thereto on any such return.

## ARTICLE XII

## ESTATE RIGHTS AND WAIVERS

12.1   Each of the parties waives, discharges, releases and renounces any right of election which he or she may have or hereafter acquire regarding the estate of the other, or to take against any Last Will and Testament of the other, or any codicil thereto, whether heretofore or hereafter executed, as provided for in any law, now or hereafter effective in the State of New York or in any other state or territory of the United States or any other jurisdiction.

12.2   Each of the parties waives, discharges, releases and renounces all right, title and interest and all claims whatsoever (including, without limitation, all rights or claims to a distributive share in the case of intestacy, and all other inheritance rights and all dower, courtesy and community property rights and interests) that he or she may have or hereafter acquire under the laws now or hereafter in effect of the State of New York, or any other state or territory, or any other jurisdiction, in the estate of the other, or to the real and personal property of the other, wheresoever the same may be situated and whether acquired before or after the date of this Agreement.

12.3   Each of the parties waives, discharges, releases and renounces any and all claims and rights that he or she may have or may hereafter acquire to act as a fiduciary of the other party's estate.

- 41 -

## ARTICLE XIII

### ATTORNEY FEES AND COSTS IN CONNECTION
### WITH ENFORCEMENT OF THIS AGREEMENT

13.1 In the event that either Husband or Wife brings an action or proceeding, to enforce this Agreement, the party who is finally successful in such action or proceeding shall be entitled to recover the attorneys fees reasonably incurred, court costs and expenses, including, but not limited to, fees, costs and expenses incurred on any successful appeal or appeals.

13.2 The provisions of this Article shall be in addition, and without prejudice, to any other rights and remedies to which the aggrieved party may be entitled.

13.3 In order to make specific and definite and/or to eliminate, if possible, any controversy which may arise between the parties hereunder, the parties agree that if at any time either believes that the material terms of this agreement are not being performed by the other as herein provided, the complaining party will so notify the other in writing, of the specific nature of any claim, non-performance or misfeasance and shall allow the other party 20 days after receipt thereof within which to cure such claimed non-performance before bringing any action or proceeding.

- 42 -

## ARTICLE XIV

### ADVICE OF COUNSEL, DISCLOSURE AND
### BASIC FAIRNESS OF THIS AGREEMENT

14.1  Each party acknowledges that he or she has sought and obtained legal advice from counsel of his or her own selection; that each has been fully informed of his or her legal rights and obligations with respect to this Agreement and the subject matter thereof; that all of the provisions hereof as well as all related questions and implications have been duly and satisfactorily explained to each of them and that each has read this agreement and understands and assents to its provisions; that this Agreement is fair and reasonable; and that each of them is entering into this Agreement freely and voluntarily.

14.2  Wife has been represented by the firm of Ellenbogen & Goldstein, P.C., and Wife represents that she will pay to said firm any sums due for their legal fees.

14.3  Husband has been represented by the firm of Phillips, Nizer, Benjamin, Krim & Ballon and Husband represents that Husband will pay to said firm any sums due for their legal fees.

14.4  Each party has acknowledged a degree of familiarity with and knowledge of the financial circumstances of the other and each party is of the opinion that he and she are sufficiently informed of income, assets, property and financial prospects of the other.  Husband has provided wife

- 43 -

with his net worth statement and the statement of financial condition dated as of July 1, 1988, provided, however, that Husband makes no representation as to the value of the interest in a second and third mortgage on various properties involved in cooperative conversions in Queens, New York in which the investment was listed on his statement of financial condition dated as of July 1, 1988 at a value of $8,745,169.

14.5   Each party acknowledges that respective counsel have advised that under the Equitable Distribution Law of the State they are each entitled to a full disclosure and valuation of all property owned by the other party and that the complete financial disclosure which could be required if this matter continued in litigation has not been obtained, but both parties have advised their counsel that they are aware of these facts and desire to curtail discovery, are unwilling to litigate the issues and desire to proceed with this Agreement on the limited financial data supplied to date and their own knowledge of the other party's financial affairs.

14.6   Each party acknowledges that this Agreement has not been the result of any duress or undue influence exercised by either party upon the other or by any other persons upon the other.

14.7   Each party acknowledges that this Agreement has been achieved after what they consider to be sufficient disclosure, consultation with legal representatives and bona fide negotiations; that this Agreement is fair and reasonable;

- 44 -

that each of them clearly understands and assents to all of the provisions hereof; and that each of them is entering this Agreement freely and voluntarily.

14.8   Each party acknowledges that they are both in good health, and capable of being gainfully employed.  Wife believes that the provisions herein made for the support and maintenance of the Children and for the distribution of marital property are fair, adequate, reasonable and satisfactory.

14.9   Each party hereby accepts performance of the terms, covenants and provisions of this Agreement in lieu of any other claims or provisions for distribution of marital property and maintenance or support, and the provisions hereof shall be and constitute a full, complete and final settlement of the parties obligations for maintenance and support and division of marital property, now and hereafter, and in all jurisdictions, as well as the satisfaction of each and every chose in action or property claim each party may have against the other arising out of their marriage.

14.10   Each party mutually releases and discharges the other of and from any claim or cause of action against the other, except as to any obligations provided for or arising out of this Agreement and any cause of action for divorce.  Nothing herein contained shall be deemed to prevent either party from enforcing the terms of this Agreement or from asserting such claims as are reserved to each party by this Agreement against the estate of the other.

- 45 -

## ARTICLE XV

### THE DIVORCE JUDGMENT

15.1  Neither of the parties shall cause or request that any provision be inserted in the final judgment or decree of the court which shall be inconsistent with any of the provisions of this Agreement.

15.2  To the extent possible and appropriate, the terms and provisions of this Agreement shall be incorporated and become a part of any such final judgment or decree, and shall not merge therein and shall survive such final judgment or decree.

## ARTICLE XVI

### EFFECT OF BANKRUPTCY OR ASSIGNMENT

No claim in favor of either party against the other party arising out of this Agreement shall be dischargeable in bankruptcy by such party, but shall survive the filing of any bankruptcy petition filed by such party in any bankruptcy proceedings, including a general assignment for the benefit of creditors and any other insolvency proceedings which may be filed, and any such claim shall be deemed binding and enforceable until this Agreement is fully performed and discharged according to its terms.

## ARTICLE XVII

### RECONCILIATION AND MATRIMONIAL DECREE

This Agreement shall not be invalidated or otherwise affected by a temporary reconciliation between the parties hereto or by a resumption of marital relations between them unless said reconciliation or said resumption be accompanied by a written statement signed and acknowledged by the parties with respect to said reconciliation and resumption and, in addition, setting forth that they are cancelling this Agreement.

## ARTICLE XVIII

### COUNSEL FEES IN CONNECTION WITH THIS AGREEMENT

Each party shall pay their own counsel fees and promises to hold the other party harmless and indemnified of and from any counsel fees (together with disbursements) incurred by him or her in connection with such Agreement and the services of any other counsel which were rendered preliminary to the making of the Agreement. Specifically, the Wife agrees to hold the Husband harmless and to indemnify him of and from any liability on account of counsel fees (together with disbursements) incurred by the Wife with the following law firms:  Javits, Robinson, Brog, Leinwand & Reich, P.C.; Rosen, Rudd, Felzen, Kern, Graubard & Hollender; and Ellenbogen & Goldstein, P.C.

- 49 -

## ARTICLE XIX

### GENERAL PROVISIONS

19.1   Nothing in this Agreement shall be deemed to condone or waive any ground which either party may have against the other for divorce.

19.2   Any amounts required to be paid pursuant to this Agreement shall be made by checks drawn on a bank which is a member of the New York Clearing House.

19.3   Each party hereto, for himself or herself, and for his or her respective personal representatives, agrees that he or she will, at any time and from time to time hereafter, take any and all steps and execute and deliver any and all instruments, agreements, conveyances and assurances which the other party, or his or her respective personal representatives, shall reasonably require for the purpose of giving full force and effect to the provisions and the intents and purposes of this Agreement.

19.4   This Agreement is entire and complete and embodies all understandings and agreements between the parties.

19.5   No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement.   This Agreement is not being executed in reliance upon any representation or warranty not expressly set forth herein.

19.6   Each of the parties has read this Agreement prior to the signing thereof;

19.7  Except as otherwise provided, this Agreement may not be amended, modified, discharged, or terminated orally.  Any amendment, modification, discharge, or termination of this Agreement shall be made and executed with the same formality as this Agreement.

19.8  Any waiver by either party of any provisions of this Agreement, or of any rights hereunder, shall not be deemed a continuing waiver and shall not prevent or stop such party from thereafter enforcing such provisions or rights, and the failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Agreement by the other party shall not be construed as a waiver or relinquishment for the future of any such terms or provisions. but the same shall continue in force and effect.

19.9  All notices and other communications ("Communications") required or desired to be sent to either party hereto shall be sent to such party by certified mail return receipt requested or by registered mail to the addresses specified in subparagraph 19.12 hereinbelow or to such other address or person as may be specified by subsequent writing.

19.10  This Agreement shall be governed by and be interpreted in accordance with the laws of the State of New York.

19.11  In the event that any article or portion of any article of this Agreement shall be held invalid or unenforceable for any reason, it shall not in any way

- 51 -

invalidate, effect or pair the remainder of this Agreement, it being the intention of the parties that this Agreement shall be binding upon and enforceable against both parties to the extent permitted by law.

19.12  This Agreement may be executed by the separate signatures and acknowledgments of the parties hereto on counterpart copies hereof and shall become effective when counterparts so executed and acknowledged have been exchanged by the parties.

19.13  This Agreement shall be binding upon and inure to the benefit of the parties, their heirs-at-law, distributees, next-of-kin, executors, administrators and other personal representatives.

19.14  All Communications required to be given under the terms of this Agreement shall, unless changed in the manner hereinbefore provided for, be mailed to the address of the addresee by regular mail as follows:

    Mrs. Patricia Cohen
    120 East End Avenue
    New York, New York  10028

    Mr. Steven A. Cohen
    210 East 65th Street
    New York, New York  10021

19.15  Captions are for convenience in reading this Agreement and are not to be considered as substantive terms of the Agreement.

- 52 -

19.16  Simultaneously with the execution of this Agreement the parties shall execute a memorandum of such agreement containing the information required by D.R.L. Section 170(6) and acknowledged for filing in the Office of the County Clerk of New York County.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the date and year first above written.

PATRICIA COHEN

STEVEN A. COHEN

- 53 -

EXHIBIT A

## CHILD SUPPORT STANDARDS ACT

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

On the _15th_ day of December, 1989, before me personally came Steven A. Cohen, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he signed the same.

_Eleanor Wolton_
Notary Public

ELEANOR WOLTON
Notary Public, State of New York
No. 31-4332625
Qualified in New York County
Commission Expires November 30, 19_91_

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

On the of _15th_ day of December, 1989, before me personally came Patricia Cohen, to me known to be the individual described in and who executed the foregoing instrument, and she did duly acknowledge to me that she executed the same.

_Marcia C. Goldstein_
Notary Public
MARCIA C. GOLDSTEIN
Notary Public, State of New York
No. 31-4697201
Qualified in New York County
Commission Expires March 30, 19_91_

- 55 -