**WILLKIE FARR & GALLAGHER** LLP

MARTIN KLOTZ
212 728 8688
mklotz@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 22, 2014

**VIA ECF**

The Honorable Loretta A. Preska
Chief United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 2220
New York, NY 10007

Re:   Cohen v. Cohen et al., 09-CV-10230 (LAP)

Dear Chief Judge Preska:

      On behalf of Defendants Steven A. Cohen and Donald Cohen ("Defendants"), we write respectfully to request a conference with Your Honor to address two discovery issues that we have with Plaintiff Patricia Cohen's ("Plaintiff") document production in the event the Court denies Defendants' application to stay discovery and move for summary judgment. This application is being brought only after the parties have met and conferred in good faith in person, and in writing, and have reached an impasse in resolving these discovery disputes. This application will be moot if our prior application for a stay is granted, but we bring it now because no stay is yet in effect.

      This action arises from Patricia Cohen's claim against her former husband, Steven A. Cohen ("Steven"), that she was defrauded out of $2.75 million in connection with their divorce proceedings that were concluded 25 years ago. Following this Court's January 27, 2014 order granting in part and denying in part Defendants' Renewed Motion to Dismiss, Defendants served requests for the production of documents on Plaintiff (the "Requests"). The Requests sought, among other things, documents and communications concerning Patricia's investigation into bringing a cause of action against Defendants, the Lurie litigation, and Patricia and Steven's divorce action in the late 1980s. Plaintiff has withheld from production two categories of documents based on improper claims of attorney-client and/or work product privilege.

      A.   Communications Between Plaintiff and Michael Bowe

      Plaintiff has withheld on attorney-client privilege and/or attorney work product grounds fifty-seven emails between herself and Mr. Michael Bowe, an attorney with the law firm Kasowitz Benson Torres & Friedman LLP, from September 25, 2006 through March 22, 2007. Mr. Bowe, however, was

never Plaintiff's attorney, and he has publicly denied ever having had anything at all to do with this litigation.[1]  Plaintiff also did not identify Mr. Bowe as her counsel either before or after this lawsuit was filed, including in response to an interrogatory specifically requesting that she identify all counsel who have represented her in this matter.  Plaintiff nevertheless claims these communications are privileged because they occurred "in the context of discussions about Mrs. Cohen retaining Mr. Bowe's firm or playing some role as her counsel . . . ."  That is wrong.

The attorney-client privilege shields only "confidential communications made between a client and his attorney for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship and that are primarily or predominantly of a legal character."  *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, Nos. 12 Civ. 1579, 12 Civ. 7322, 2013 WL 1195545, at *9 (S.D.N.Y. Mar. 25, 2013) (quoting *Gruss v. Zwirn*, 276 F.R.D. 115, 123 (S.D.N.Y. 2001)).  Communications with an attorney that predate formal retention *may* be privileged, but only if they were made during a "'preliminary consultation' [] undertaken 'with a view toward retention.'"  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 429 (S.D.N.Y. 2013) (quoting *Pellegrino v. Oppenheimer & Co.*, 49 A.D. 3d 94, 99, 851 N.Y.S.2d 19 (1st Dep't 2008)).  Here, no attorney-client relationship was formed because Mr. Bowe never represented Plaintiff—he represented Biovail Corp. and Fairfax Financial Holdings, Ltd., two unrelated litigation adversaries of Steven Cohen and his companies.  Nor can it be the case that all 57 communications between Mr. Bowe and Plaintiff over a period of six months were "preliminary consultations" undertaken with a view towards retention, even if these communications were at some point made in the context of a potential engagement (which does not seem to be the case given Mr. Bowe's public statements).  This is not a situation where Plaintiff had a few conversations with a prospective lawyer and decided not to retain him.  Rather, Plaintiff had dozens of communications over the course of at least six months with <u>the counsel for other parties that were suing Steven</u>.  No privilege attaches to such communications.

Nor do the disputed communications support a colorable work product claim.  Work-product immunity protects documents prepared (1) "*because of* the prospect of litigation" and (2) by or for a party or its representative.  *See U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); Fed. R. Civ. P. 26(b)(3).  It does not protect communications with a lawyer who is not Patricia's representative and who, therefore, cannot have prepared the documents because of the prospect of litigation.  Moreover, given the timing of these communications, any work product assertion would clearly be overwhelmed by Defendants' substantial need to uncover facts about Plaintiff's investigation: if she actually believed in late 2006 or early 2007 that she had a claim against Steven based on the Lurie investment, then her assertion of such a claim in late 2009 would clearly be time-barred.  *See* N.Y. CPLR §§ 213(8), 203(g).  We cannot obtain these facts elsewhere and they are highly probative of Defendants' statute of limitations defense.  *See* FRCP 26(b)(3)(A)(ii); *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 185-86 (2d Cir. 2007).

---

[1] At the time of these communications, Mr. Bowe represented two other companies, Biovail Corp. and Fairfax Financial Holdings Ltd., which had then-pending lawsuits against S.A.C. Capital Advisors, L.P., a company owned by Steven Cohen. In May 2011, Bloomberg published the contents of an email from Mr. Bowe to Bloomberg which said "Neither Fairfax nor its lawyers had anything to do with Patricia Cohen's lawsuit, and only learned about it from news reports . . . . Suggestions otherwise sound paranoid."  *See* Thom Weidlich, *SAC Says Cohen's Ex-Wife Met With Fairfax*, BLOOMBERG (May 13, 2011, 3:24 PM), http://www.bloomberg.com/news/2011-05-13/sac-says-cohen-s-ex-wife-met-with-fairfax.html.

The Honorable Loretta A. Preska
October 22, 2014
Page 3

      B.      <u>Communications with Non-Attorney Stacey Napp</u>

Plaintiff has withheld more than 400 communications with non-lawyer Stacey Napp—the CEO and founder of Balance Point Divorce Funding, a litigation funding firm, not a law firm—on a variety of legal theories. These communications span the period between May 2010 and April 2014. However, Ms. Napp does not appear to have been a member of any state bar since 2003. Counsel's position is that Plaintiff's communications with Ms. Napp are privileged because Ms. Napp was acting as a "consultant" to Plaintiff's attorneys. Plaintiff, however, refuses to produce any consultant agreement with Balance Point, choosing instead to summarize certain agreements apparently entered into on or after June 29, 2013 (more than three years after her communications began with Balance Point).

"Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged." *Egiazaryan*, 290 F.R.D. at 430 (quoting *People v. Osorio*, 75 N.Y.2d 80, 84, 550 N.Y.S.2d 612, 549 N.E.2d 1183 (1989)). A limited "exception exists where communications [are] made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication." *Id.* at 430 (internal quotation marks and citations omitted). To qualify for this exception, Plaintiff must show "(1) . . . a reasonable expectation of confidentiality under the circumstances, and (2) [that] disclosure to the third party was necessary for the client to obtain informed legal advice." *Id.* at 431 (quoting *Don v. Singer*, No. 105584/06, 2008 WL 2229743, at *5 (Sup. Ct. N.Y. Cnty. May 19, 2008)). "[T]he 'necessity' element means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." *Id.* (*quoting Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999)).

Ms. Napp's participation was clearly not necessary to Plaintiff's legal representation. Indeed, far from serving as the agent of Plaintiff's attorneys, Ms. Napp appears to have assisted Plaintiff in directing those attorneys. As a non-lawyer business associate of Plaintiff, neither her communications with Plaintiff, nor her communications with Plaintiff's counsel, are privileged.

For the foregoing reasons, Defendants respectfully request a conference or permission to file a motion to compel if Your Honor does not grant Defendants' request to stay discovery.

Respectfully submitted,

Martin Klotz

cc:    Gerald B. Lefcourt, Esq.
        Sheryl E. Reich, Esq.