UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
PATRICIA COHEN,                     :
                                    :
            Plaintiff,              :   09 Civ. 10230 (LAP)
                                    :
     -against-                      :   MEMORANDUM & ORDER
                                    :
STEVEN A. COHEN, et al.,            :
                                    :
            Defendants.             :
                                    :
------------------------------------x

LORETTA A. PRESKA, U.S.D.J.:

Defendants Steven and Donald Cohen seek an order compelling Plaintiff to produce certain email communications that she has withheld on the grounds of privilege. After reviewing the contested communications in camera and considering the parties' arguments made in their letter submissions and at oral argument held on November 17, 2014, the Court has concluded that (1) communications between Plaintiff and litigation funder Stacey Napp ("Ms. Napp") are not subject to any privilege, and (2) communications between Plaintiff and attorney Michael Bowe ("Mr. Bowe") are subject to a limited attorney-client privilege, which covers some but not all of the withheld documents.

I.   BACKGROUND

This suit arises out of Plaintiff's allegation that her former husband, Defendant Steven Cohen ("Steven"), with the assistance of his brother, Defendant Donald Cohen, fraudulently

1

concealed marital assets during their divorce proceedings more than two decades ago. The parties are currently engaged in discovery, and the present dispute focuses on two categories of documents that Plaintiff has withheld on privilege grounds.

The first group consists of emails between Plaintiff and Ms. Napp. Plaintiff's counsel engaged Ms. Napp, who is a non-practicing attorney and litigation funder, "to provide litigation support" to their legal team. (Pl. Ltr. [dkt. no. 139] dated Oct. 27, 2014, at 3.) This arrangement was memorialized in two Consulting Agreements, both of which indicated that Ms. Napp would "render advice, assistance, consultation, and expert opinion" to Plaintiff's attorneys; asserted that her work would be covered by attorney-client privilege; noted that she is "not an agent, employee, servant of representative of" Plaintiff or her attorneys; and confirmed that Plaintiff would pay Ms. Napp's compensation directly. (Agreement between Joshua L. Dratel, Esq. and Balance Point Divorce Funding, LLC, dated June 29, 2013 ("First Consulting Agreement"), at 1-2; Agreement between Gerald B. Lefcourt, P.C. and Balance Point Divorce Funding, LLC, dated April 24, 2014 ("Second Consulting Agreement"), at 1-2.) Additionally, Plaintiff and Ms. Napp entered into a "Joint Interest" agreement meant to establish a common legal interest between them regarding the present claims against Defendants. (Joint

Interest/Joint Prosecution Agreement between Patricia Cohen and Balance Point Divorce Funding, LLC, dated April 22, 2013.)

Following Ms. Napp's engagement, Plaintiff exchanged several hundred emails with her regarding the present lawsuit. These emails included discussions of legal strategy, court filings, discovery, and funding for the litigation. Plaintiff has withheld these emails arguing that they are privileged either by virtue of Ms. Napp's necessary role in facilitating the provision of legal advice or based on her common legal interest with Plaintiff. (See Pl. Ltr. dated Oct. 27, 2014, at 2-3; Pl. Ltr. dated Nov. 24, 2014, at 1-2). Defendants argue that they are entitled to review these emails because as a non-attorney litigation funder, Ms. Napp does not satisfy the requirements for any exception to the principle that communications with third parties are not privileged. (See Def. Ltr. [dkt. no. 138] dated Oct. 22, 2014, at 3; Def. Ltr. [dkt. no. 140] dated Oct. 28, 2014, at 1-2.)

The second group of withheld documents consists of fifty-seven emails between Plaintiff and Mr. Bowe sent from September 2006 through March 2007. Plaintiff asserts that these communications were solely for the purpose of evaluating her potential legal claims against Steven and discussing whether Mr. Bowe might represent her in bringing those claims. (See Pl. Ltr. dated Oct. 27, 2014, at 1-2.) On this basis, she has

withheld these emails as privileged preliminary consultations seeking and providing legal advice. Defendants respond by noting that at the time of these communications, Mr. Bowe was already representing other parties who were suing Steven. (See Def. Ltr. dated Oct. 22, 2014, at 2 n.1.) They argue that this background makes it far more likely that Mr. Bowe and Plaintiff were colluding in their "shared interest in making public attacks on Steven," rather than preliminarily discussing her own claims for six months. (Def. Ltr. dated Oct. 28, 2014, at 1.)

Following oral argument, Plaintiff submitted all disputed emails to the Court for in camera review. Simultaneously, Plaintiff provided affidavits from herself and Mr. Bowe, which stated that their consultations revolved around the possibility of Mr. Bowe's representing Plaintiff in a lawsuit against Steven. Both affirm that although Plaintiff did not ultimately retain Mr. Bowe, their emails sought and provided legal advice, which they understood to be privileged. (See Decl. of Patricia Cohen dated Nov. 18, 2014 ("Pl. Decl.") ¶¶ 3-5; Decl. of Michael J. Bowe, Esq. dated Nov. 19, 2014 ("Bowe Decl.") ¶¶ 3-4.)

II. COMMUNICATIONS WITH MS. NAPP

A. Applicable Law

It is undisputed that this Court sits in diversity and must accordingly apply New York law in considering whether communications with Ms. Napp are protected by attorney-client

privilege. See Fed. R. Evid. 501; In re Am. Tobacco Co., 880 F.2d 1520, 1527 (2d Cir. 1989). New York courts take a conservative approach to attorney-client privilege, emphasizing that because it "constitutes an obstacle to the truth-finding process, . . . the protection claimed must be narrowly construed." Sieger v. Zak, 874 N.Y.S.2d 535, 537 (N.Y. App. Div. 2d Dept. 2009) (quoting Matter of Priest v. Hennessy, 51 N.Y.2d 62, 68 (N.Y. 1980); Spectrum Sys. Int'l Corp. v. Chemical Bank, 78 N.Y.2d 371, 377 (N.Y. 1991)) (internal quotation marks omitted). The privilege attaches to communications between an attorney and client made in confidence "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." Spectrum Sys. Int'l Corp., 78 N.Y.2d at 378 (quoting Rossi v. Blue Cross & Blue Shield of Greater N.Y., 73 N.Y.2d 588, 593 (N.Y. 1989)) (internal quotation marks omitted). That privilege is waived, however, when a third party is privy to the communications, unless certain exceptions apply. See People v. Osario, 75 N.Y.2d 80, 84 (N.Y. 1989). Here, it is undisputed that Ms. Napp is not an attorney, and Plaintiff's communications with her are thus only privileged if an exception to the general waiver rule applies.[1]

---

[1] Plaintiff has not argued that Ms. Napp is an agent or employee of either Plaintiff or her attorneys. Indeed, such an argument appears foreclosed by the express disavowal of any agency or employment (cont'd on next page)

Plaintiff first relies on the Kovel line of cases, which protects "communications made to counsel through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication" under the attorney-client privilege. Id. (citing United States v. Kovel, 296 F.2d 918, 921-22 (2d Cir. 1961)). For this rule to apply, the party asserting the privilege must show "(1) . . . a reasonable expectation of confidentiality under the circumstances, and (2) [that] disclosure to the third party was necessary for the client to obtain informed legal advice." Don v. Singer, 866 N.Y.S.2d 91, 2008 WL 2229743, at *5 (N.Y. Sup. Ct. May 19, 2008) (quoting Osario, 75 N.Y.2d at 84) (internal quotation marks omitted). The necessity element goes beyond mere convenience and "requires [that] the involvement [of the third party] be indispensable or serve some specialized purpose in facilitating the attorney client communications." Id. (quoting Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp., 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999)) (internal quotation mark omitted). Given this high bar, the privilege extends only to essential third parties, such as foreign language interpreters or

---

(cont'd from previous page) relationship in Ms. Napp's Consulting Agreements. (See First Consulting Agreement at 2; Second Consulting Agreement at 2.) Additionally, Plaintiff has explicitly withdrawn her claim that communications with Ms. Napp are privileged work product. (See Pl. Ltr. dated Oct. 27, 2014, at 2.) Consequently, this Memorandum & Order does not consider either of those possible avenues to privilege.

6

accountants who can clarify complex financial issues directly related to the provision of legal advice. See Delta Fin. Corp. v. Morrison, 820 N.Y.S.2d 745, 748-49 (N.Y. Sup. Ct. 2006); United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999).

Alternatively, Plaintiff claims that she shares a common legal interest with Ms. Napp. The common legal interest doctrine protects attorney-client communications in the presence of a third party where "(1) the communication[s] qualify for protection under the attorney-client privilege, and (2) the communication[s] [are] made for the purpose of furthering a legal interest or strategy common to the parties." Ambac Assurance Corp. v. Countrywide Home Loans, Inc., __ N.Y.S.2d __, 2014 WL 6803006 at *2 (N.Y. App. Div. 1st Dept. Dec. 4, 2014). To satisfy this standard, "the privileged communication must be for the purpose of furthering a legal interest common to the client and the third party," and "[t]he legal interest that those parties have in common must be identical (or nearly identical), as opposed to merely similar." Hyatt v. State Franchise Tax Bd., 962 N.Y.S.2d 282, 296 (N.Y. App. Div. 2d Dept. 2013). This doctrine "does not protect business or personal communications" but rather applies where "joint consulting parties" to a litigation "have a common legal interest." The OMNI Health & Fitness Complex of Pelham, Inc. v.

P/A Acadia Pelham Manor, LLC, 939 N.Y.S.2d 742, 2011 WL 4985197, at *2 (N.Y. Sup. Ct. Sept. 28, 2011).

B.  Discussion

Because Ms. Napp is neither necessary to facilitate Plaintiff's communications with counsel nor in possession of a legal claim against Defendants, her communications with Plaintiff are not privileged. With regard to her Kovel argument, Plaintiff has made no showing that Ms. Napp is "indispensable or serve[s] some specialized purpose in facilitating the attorney client communications." Don, 866 N.Y.S.2d 91, 2008 WL 2229743, at *5 (quoting Nat'l Educ. Training Grp., Inc., 1999 WL 378337, at *4) (internal quotation mark omitted). Rather, her primary purpose appears initially to be making a decision as to whether her company will fund Plaintiff's legal team and thereafter reviewing and commenting on legal strategy presumably to maximize the chances of a return on her investment. These functions cannot be analogized to the interpreters or accountants of the Kovel line, who serve a specific function necessary to effectuate legal representation. See Delta Fin. Corp., 820 N.Y.S.2d at 748-49; Ackert, 169 F.3d at 139. Ms. Napp's commentary and suggestions may be "useful," but they are by no means "necessary" to the conveyance of legal advice. Don, 866 N.Y.S.2d 91, 2008 WL 2229743, at *5 (quoting Nat'l Educ. Training Grp., Inc., 1999 WL 378337, at *4).

8

Nor can Plaintiff rely on Ms. Napp's Consulting Agreements to create such a privilege where there is none. See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC, 01 Civ. 9291, 2002 WL 1455346, at *5 (S.D.N.Y. July 3, 2002) ("[T]he fact that private parties agree that something is privileged does not make it so." (citing Aetna Cas. & Sur. Co. v. Certain Underwriters at Lloyd's London, 676 N.Y.S.2d 727, 733 (N.Y. Sup. Ct. 1998))). Although the expectation of confidentiality and expressions of need reflected in those Agreements may be relevant to this Court's analysis, the core of the inquiry must focus on the actual substance of Ms. Napp's role in the attorney-client relationship. Viewed as a whole, there is nothing about Ms. Napp's advice or commentary that is critical to Plaintiff's ability to seek and receive legal advice from her counsel.

Turning to Plaintiff's common legal interest argument, once again the substance of Ms. Napp's role undermines this privilege theory. Ms. Napp is not a party to this litigation, and there has been no suggestion that she has any legal claim against Defendants whatsoever. She thus cannot possibly share any legal interest with Plaintiff sufficient to invoke the common interest doctrine. See Ambac Assurance Corp., __ N.Y.S.2d __, 2014 WL 6803006 at *2. Although the two may have a common financial interest in the outcome of this litigation, that relationship does not fall into the narrow category primarily reserved for

9

co-litigants pursuing a shared legal strategy. See The OMNI Health & Fitness Complex of Pelham, Inc., 939 N.Y.S.2d 742, 2011 WL 4985197, at *2; United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). The "Joint Interest" agreement between Ms. Napp and Plaintiff cannot change the substance of their relationship, which is inherently financial and in no way within the mold of a common legal interest. See Brooklyn Navy Yard Cogeneration Partners v. PMNC, 753 N.Y.S.2d 343, 345 (N.Y. Sup. Ct. 2002) ("The law is well settled that the mere existence of . . . cooperation agreements . . . cannot create a privilege that otherwise does not exist. A private agreement by the parties to protect communications cannot create a privilege." (alteration in original) (quoting Aetna Cas. & Sur. Co, 676 N.Y.S.2d at 733) (internal quotation mark omitted)); Schaeffler v. United States, 22 F. Supp. 3d 319, 334 (S.D.N.Y. 2014) ("[T]he mere assertion of a common legal interest in a written agreement cannot create such an interest. What matters is whether there exists in actuality a common legal interest between the contracting parties.").

Because Ms. Napp is a third party with no privileged relationship to Plaintiff, her inclusion in Plaintiff's emails waived any otherwise applicable attorney-client privilege. As such, Plaintiff must produce any email communications with Ms. Napp that are responsive to Defendants' document requests.

10

III. COMMUNICATIONS WITH MR. BOWE

A. Applicable Law

Under New York law "attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." In re Nassau Cnty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 N.Y.3d 665, 678 (N.Y. 2005). A prerequisite to the application of the privilege, however, is the existence of an attorney-client relationship. See People v. Mitchell, 58 N.Y.2d 368, 373 (N.Y. 1983). Such a relationship does not require a formal agreement or payment and "can encompass preliminary consultation" so long as it is conducted "with a view toward retention." Pellegrino v. Oppenheimer & Co., 851 N.Y.S.2d 19, 24 (N.Y. App. Div. 1st Dept. 2008) (quoting Rose Ocko Found. v. Liebowitz, 547 N.Y.S.2d 89, 90 (N.Y. App. Div. 1st Dept. 1989)) (internal quotation mark omitted). This is so even if a client "does not ultimately retain the attorney." Id. A client's own expectations or beliefs alone, however, are insufficient to form an attorney-client relationship. Id. Rather, the attorney must make "an explicit undertaking to perform a specific task" in order to create such a relationship. Id. at 23-24 (quoting Wei Cheng Chang v. Pi, 733 N.Y.S.2d 471, 473 (N.Y. App. Div. 2d Dept. 2001)) (internal quotation mark omitted); see also Egiazaryan v. Zalmayev, 290 F.R.D. 421, 428-29 (S.D.N.Y. 2013).

11

Once an attorney-client relationship has been established, only communications between the client and the attorney that are "primarily or predominantly of a legal character," with a focus on the provision of legal advice or services are protected by the attorney-client privilege. Rossi, 73 N.Y.2d at 594; see also Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 379 (N.Y. 1991) ("The critical inquiry is whether, viewing the lawyer's communications in its full content and context, it was made in order to render legal advice or services to the client."). In evaluating privilege claims, the Court may "parse" between communications aimed at giving or receiving legal advice, which may be withheld as privileged, and those that are unrelated to the client's claims, which may not. Roberts v. Corwin, 964 N.Y.S.2d 62, 2012 WL 4512895, at *3 (N.Y. Sup. Ct. Sept. 10, 2012). This determination "is necessarily a fact-specific" one, "most often requiring in camera review." Spectrum Sys. Int'l Corp., 78 N.Y.2d at 378.

B. Discussion

Based on the affidavits from Plaintiff and Mr. Bowe, taken together with their email exchanges reviewed in camera, the Court concludes that the two did indeed form an attorney-client relationship. It is clear that Plaintiff approached Mr. Bowe to seek advice regarding her own potential claims against Steven. (See Pl. Decl. ¶¶ 2-3; Bowe Decl. ¶¶ 3-4.) Although Plaintiff

12

never paid or entered into a formal agreement with Mr. Bowe, she provided him with information about legal claims that she believed were cognizable against Steven with the expectation that Mr. Bowe would analyze their viability and advise her on how to proceed. (See Pl. Decl. ¶¶ 3-4; Bowe Decl. ¶¶ 3-4.) See Egiazaryan, 290 F.R.D. at 429; Roberts, 964 N.Y.S.2d 62, 2012 WL 4512895, at *2. In response, Mr. Bowe undertook to provide her with legal advice regarding her potential claims and to assist her in deciding whether ultimately to file suit. (See Pl. Decl. ¶ 3, 5; Bowe Decl. ¶ 4.) See Roberts, 964 N.Y.S.2d 62, 2012 WL 4512895, at *2.

Consistent with this understanding, many of their communications discuss legal strategy and analysis, including the content and timing of a potential complaint and the engagement of additional attorneys to lead Plaintiff's legal team. (See Pl. Decl. ¶¶ 3-4; Bowe Decl. ¶ 4.) Of particular note, Mr. Bowe repeatedly assured Plaintiff that he would provide her with requested advice and support. See Pellegrino, 851 N.Y.S.2d at 23-24 ("[A]n attorney-client relationship is established where there is an explicit undertaking to perform a specific task." (quoting Wei Cheng Chang, 733 N.Y.S.2d at 473) (internal quotation marks omitted)). Combined with the assurances from Plaintiff's and Mr. Bowe's affidavits that they considered their communications to be privileged as part of

13

preliminary consultations with a view toward retention, these emails reveal the existence of an attorney-client relationship from September 2006 until March 2007. See id.; Roberts, 964 N.Y.S.2d 62, 2012 WL 4512895, at *2-3.

This conclusion, however, does not end the Court's analysis. Though many of the emails between Plaintiff and Mr. Bowe involve the provision of legal advice, several are unrelated to any of Plaintiff's potential legal claims. Some of these discussions refer to Steven more generally but do not appear connected in any way to a request for legal advice. Such communications are not protected by the attorney-client privilege, and to the extent that they are responsive to Defendants' document requests, they must be produced. See Rossi, 73 N.Y.2d at 594.

Specifically, based on its in camera review, the Court finds that the emails numbered 438, 440, 442-448, 453-462, 466-471 and 476-487 were sent in the broader context of seeking or providing legal advice and are therefore protected by the attorney-client privilege. See id. The remaining emails (numbered 437, 439, 441, 449-452, 463-465, 472-475, and 488-493) are general communications unrelated to any of Plaintiff's potential claims. Although these emails may refer to Steven and other tangential matters, they do not centrally concern the provision of legal advice or services on their face, and

14

Plaintiff has not presented any evidence suggesting otherwise. See id. Because these emails have no apparent connection to the matters about which Mr. Bowe provided Plaintiff with legal advice, the Court concludes that they are not subject to the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff shall produce all communications between Plaintiff and Ms. Napp that are responsive to Defendants' document requests.

2. Plaintiff shall produce all communications between Plaintiff and Mr. Bowe that are not directly related to the provision of legal advice, specifically, documents numbered 437, 439, 441, 449-452, 463-465, 472-475, and 488-493, to the extent they are responsive to Defendant's document requests. The remaining communications between Plaintiff and Mr. Bowe, numbered 438, 440, 442-448, 453-462, 466-471, and 476-487, are privileged and need not be produced.

SO ORDERED:

Dated:   New York, New York
         January 29, 2015

_____
LORETTA A. PRESKA
Chief United States District Judge

15